UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

PHARAOHS GC, INC.

Plaintiff,

v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION;

JOVITA CARRANZA, in her Official Capacity
as Administrator of the Small Business Administration;

UNITED STATES OF AMERICA

STEVE MNUCHIN, in his Official Capacity as United
States Secretary of Treasury,

Defendants.

_____

**COMPLAINT**

Civil Case No. 1 : 20 -cv -665

As for its Complaint against the above-named Defendants, Plaintiff Pharaohs GC, Inc., by

and through its undersigned attorneys, HoganWillig, PLLC alleges as follows:

## INTRODUCTION

1.     This civil action is brought by Plaintiff to obtain emergency declaratory and

injunctive relief prohibiting Defendants from discriminating against Plaintiff on the basis of the

content of protected speech and/or damages resulting from discrimination already done.  Plaintiff

seeks to enjoin Defendants from imposing funding limitations which exceed their statutory

authority and discriminate against Plaintiff with respect to its eligibility for loans provided by the

Small Business Administration ("SBA"), and the Paycheck Protection Program ("PPP") of the

Coronavirus, Aid, Relief, and Economic Security Act (the "CARES Act").  This program is

designed to provide small businesses economic relief.  However, exclusionary eligibility criteria

developed by the SBA unconstitutionally restricts access to SBA programs and loans to businesses engaged in speech protected by the First Amendment and exceed statutory authority.

2.      The United States Congress approved $349 billion in funds to the SBA and its approved lenders to fund the PPP loans in response to the COVID-19 pandemic. After the program ran out of funds within a little over two weeks, Congress approved approximately $300 billion in additional funds for the PPP. That money is disbursed first-come, first-served. Given the success of the PPP loan program and the quick drain of the initial allotment, an emergency injunction is necessary to prevent irreparable injury to the Plaintiff. Upon information and belief, money is available to lend.

## PARTIES

3.      Plaintiff is an S Corporation, organized under the laws of the State of New York; it owns and operates "Pharaohs GC, Inc." also known as "Pharaohs", with a principal place of business located at 999 Aero Drive, in the Town of Cheektowaga, Erie County, State of New York.

4.      Plaintiff is authorized by the Town of Cheektowaga to serve alcoholic beverages on its premises and to present adult entertainment consisting of nude and semi-nude dancers.

5.      Plaintiff has never been ticketed, cited, charged, or convicted of any obscenity related crime and no such crimes are currently pending.

6.      Defendant United States Small Business Administration (the "SBA") is an independent federal agency created and authorized pursuant to 15 U.S.C § 633.

7.      Defendant Jovita Carranza ("Carranza" or the "Administrator") is the Administrator of the SBA, a Cabinet-level position, and is sued in her official capacity of the SBA.

2

8.      Authority to sue the Administrator is granted by 15 U.S.C. § 634(b) which states, in part: "In the performance of, and with respect to, the functions, powers, and duties vested in him by this chapter the Administrator may (1) sue and be sued in any court of record of a State having general jurisdiction, or in any United States district court, and jurisdiction is conferred upon such district court to determine such controversies without regard to the amount in controversy…."

9.      Steven Mnuchin (the "Secretary") is the Secretary of the Treasury Department of the United States of America, and is sued in his official capacity only as the Secretary of the Treasury Department.

10.     The United States of America is a sovereign nation dedicated to the protection of life, liberty, and property, as set forth in the Bill of Rights and other provisions and amendments to the Constitution of the United States of America.

## JURISDICTION AND VENUE

11.     Jurisdiction is conferred on this Court for the resolution of the questions presented here by virtue of 28 U.S.C. § 1331; 28 U.S.C. § 1343(a)(1), (3), (4); 28 U.S.C. § 1346(a)(2); and 28 U.S.C. § 1361.

12.     Authority for judicial review of agency action is further provided by 5 U.S.C. § 702.

13.     The request for declaratory relief herein is founded in part on Rule 57 of the Federal Rules of Civil Procedure, as well as 28 U.S.C. § 2201.

14.     The jurisdiction of this Court to grant injunctive relief is conferred upon this Court by Rule 65 of the Federal Rules of Civil Procedure, as well as 29 U.S.C. §2202.

15.    The Western District of New York is the proper venue for this action because the Plaintiff's claims arose within the geographical boundaries of the Western  District of New York within the meaning of 28 U.S.C. § 1391(b).

## RELEVANT STATUTORY PROVISIONS AND ADMINISTRATIVE REGULATIONS

16.    The Small Business Act was passed by Congress as a recognition that private enterprise and free competition are the essence of the American economy and to assure the "free entry into business, and opportunities for the expression and growth of personal initiative and individual judgment." (15 U.S.C. § 631(a))

17.    Pursuant to that declaration of policy, the SBA administers loans to small business concerns that have trouble finding credit elsewhere and passing a criminal background check. (15 U.S.C. §636(a); Section 7(a) of the Small Business Act)

18.    The Small Business Act also authorizes the SBA to provide direct loans (or in coordination with approved lenders) loans to small businesses that have suffered economic injury due to a declared disaster (15 U.S.C. § 636(b)(2); Section 7(b) of the Small Business Act).

19.    The CARES Act was signed into law by the President of the United States on March 28, 2020; it is currently in effect.

20.    The CARES Act created the PPP and allotted $349 billion to it for the purpose of providing loans administered by the SBA and its approved lenders.

21.    The PPP loans were to be partially-forgivable loans for employers to cover costs like payroll, salaries, group healthcare, rent, and utilities, in order to help offset losses that employers incur due to the COVID-19 pandemic of 2020.

22.     Section 1114 of the CARES Act instructs the SBA to promulgate rules for the PPP not later than 15 days after the enactment of the CARES Act.

23.     The CARES Act specifically tasks the SBA with administering the PPP and considers that the Administrator has delegated her authority to any lender approved to make and approve covered PPP loans.

24.     On April 1, 2020, the SBA released guiding regulations for the PPP, RIN 3245AH34, Interim Final Rule Apr. 1, 2020 ("SBA 3245").

25.     SBA 3245 provides, in relevant part that: "Businesses that are not eligible for PPP loans are identified in 13 CFR 120.110 and described further in SBA's Standard Operating Procedure (SOP) 50 10, Subpart B, Chapter 2, except that nonprofit organizations authorized under the Act are eligible."

26.     SBA 3245 further provides that PPP loans with be provided on a first-come, first served basis until funds are exhausted. The PPP has a total monetary limit of $349,000,000,000.00 ($349 Billion).

27.     13 C.F.R § 120.110(p) states that any business which presents live performances of a "prurient sexual nature" or derives more than de minimis gross revenue through the sale of products or services of a "prurient sexual nature" are ineligible for loans administered by the SBA (hereinafter "Regulations").

28.     These Regulations which apply to the PPP loans are the same Regulations which apply to traditional section 7(a) Loans under the Small Business Act.

29.     The SBA Standard Operating Procedure 50 10 5(K) – Lender and Development Company Loan Programs (Apr. 1, 2019) provides, in part, at Ch.2 (III)(A):

"15. Businesses Providing Prurient Sexual Material (13 CFR § 120.110 (p))

    a. A business is not eligible for SBA assistance if:

i. It presents live or recorded performances of a prurient sexual nature; or ii. It derives more than 5% of its gross revenue, directly or indirectly, through the sale of products, services or the presentation of any depictions or displays of a prurient sexual nature.

b. SBA has determined that financing lawful activities of a prurient sexual nature is not in the public interest. The Lender must consider whether the nature and extent of the sexual component causes the business activity to be prurient.

c. If a Lender finds that the Applicant may have a business aspect of a prurient sexual nature, prior to submitting an application to the LGPC (non-delegated) or requesting a loan number (delegated), the Lender must document and submit the analysis and supporting documentation to the Associate General Counsel for Litigation at PSMReview@sba.gov for a final Agency decision on eligibility. Upon approval by SBA, the Lender may submit the application to the LGPC or may proceed to process the loan under its delegated authority. A non-delegated Lender must submit a copy of SBA's approval with the application to the LGPC. A delegated Lender must retain its analysis, supporting documentation, and evidence of SBA's approval in its loan file and must submit the analysis and supporting documentation to SBA with any request for guaranty purchase. SBA also may review such documentation when conducting Lender oversight activities."

(These provisions are hereinafter referred to as "SOP.")

30.   Defendant SBA is responsible for formulating, issuing, and enforcing the Regulations and the SOP.

31.     The application for the PPP requires Plaintiff to self-certify, upon penalty of perjury, that Plaintiff "is eligible to receive a loan under the rules…that have been issued by the Small Business Administration (SBA)."

## ALLEGATIONS OF FACT AS TO ALL CAUSES OF ACTION

32.     Plaintiff (operating under the name "Pharaohs") is an establishment that is open to the consenting adult public, is authorized by the Town in which it is located to sell alcoholic beverages, and to present nude or semi-nude erotic dance entertainment.

33.     All of the entertainment provided by Pharaohs is non-obscene (and not prurient), appeals to healthy human interests and desires, and is in full compliance with the standards for the applicable legal authority of the Town to permit such entertainment.

34.     None of the live performances at Pharaohs are obscene or unlawful in any way and no entertainer performing at Pharaohs has ever been charged with, let alone convicted of, the crime of obscenity.

35.     On March 20, 2020, in response to the coronavirus pandemic, New York Governor Andrew Cuomo issued Executive Order No. 202.8 which directed each New York employer providing non-essential services to reduce the in-person workforce by 100% no later than March 22, 2020 at 8:00 p.m.

36.     Pharaohs has been closed for business since 8 p.m. on March 15, 2020 and is currently shuttered as a result of the aforementioned Executive Order.

37.     As a direct and proximate result of such state-ordered closure, the Plaintiff has suffered significant business losses, but plans to reopen when legally permitted to do so.

38.     In order to mitigate business losses and to provide monetary relief for its employees – since at least 75% of PPP loans are to be used for employee wages--the Plaintiff determined to apply for a PPP loan.

39.     Live Oak Bank is a financial institution located at 1757 Tiburon Drive, Wilmington, North Carolina.

40.     After Plaintiff attempted unsuccessfully to make online applications for two prior financial institutions, on May 21, 2020 Plaintiff made a written application for a PPP loan to be funded through Live Oak Bank.

41.     The application was correctly and completely filled out and all necessary certifications and information were provided.

42.     Pursuant to 15 U.S.C. § 636(a)(36)(F)(ii)(I), Live Oak Bank operates as a delegate of the SBA in the processing and approval or disapproval of the PPP loans.

43.     The Plaintiff is fully qualified -- but for the Regulations and the SOP or the SBA's application thereof -- to receive a PPP loan under all relevant statutes, regulations, and procedures.

44.     After designating on the online applications for the prior financial institutions that the Plaintiff was engaged in adult entertainment, Plaintiff was unable to proceed with the online applications.

45.     As to the written application submitted to Live Oak Bank, Plaintiff has been informed by Live Oak Bank that the PPP application is on hold—and is not being processed— due to the SBA standard prohibiting loans to a business such as Pharaohs that presents entertainment of a "prurient sexual nature."

46.     The Plaintiff has learned that numerous other similar businesses, which present non-obscene female performance dance entertainment of an "exotic," "topless" or fully nude variety have had their applications for PPP loans rejected by their SBA lending banks, based on their banks' stated belief that the business is disqualified by the Regulations and/or the SOP.

47.     Specifically, the Plaintiff has learned that other similar establishments have had their applications for PPP loans rejected on the belief that the clubs present "live performances of a prurient sexual nature" within the meaning of 13 C.F.R. § 120.110(p).

48.     The Plaintiff also fears that the Regulations and the SOP will cause its application to be delayed until all PPP loan funds are exhausted, rendering any later request for judicial relief to be moot.

49.     The funds allocated for PPP loans are being extended on a first-come, first-served basis until the funds are exhausted.

50.     The SOP provides that if the "Lender finds that the Applicant may have a business aspect of a prurient sexual nature" the lender is to email the SBA for a "final Agency decision on eligibility."

51.     Given the pressures and workload placed on the SBA by the CARES Act and the COVID-19 pandemic, the Plaintiff reasonably fears that no agency decision will be forthcoming while PPP funds remain, or that the SBA will decide that Plaintiff is not eligible when there is no time for it to obtain relief while PPP funds still remain.

52.     In the event that Plaintiff is unable to obtain PPP loans, it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its businesses, the inability of the Plaintiff to be engaged in protected First Amendment activity, and the inability of Plaintiffs' staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity.

53.     In asserting its First Amendment challenges to the Regulations and SOP, Plaintiff asserts not only its own rights but also the rights of its employees, and the entertainers who perform on its premises.

## VIOLATIONS OF LAW

### COUNT 1

### VIOLATION OF THE FREE SPEECH CLAUSE
### OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

54.     Plaintiff incorporates by reference paragraphs "1" through "53" as if fully restated herein.

55.     Statutes that regulate activity based upon the content of the speaker's speech are presumptively unconstitutional. *Reed v. Town of Gilbert*, 135 S. Ct. 2218 at 2226 (2015). A regulation is content-based if it requires enforcement authorities to examine the content of the message that is conveyed to determine whether an applicant for PPP benefits shall be denied, resulting in a loss of benefits for "disaster relief" that encompasses all affected small businesses.

56.     When a statute imposes a regulation that is based on the content of the speaker's speech, it is of no constitutional significance whether the statute is a complete prohibition or a limitation. The statute is still presumptively unconstitutional and subject to strict scrutiny.

57.     On their face, the SBA's regulations and conduct are susceptible to an interpretation that would deny Plaintiff benefits under the PPP program, presumably on the concept of a finding that its loans are not eligible for businesses that present live performances of a "prurient sexual nature" or derive "directly or indirectly more than de minimis gross revenue through the sale of items of a prurient sexual nature." 13 C.F.R. 120.110 (p). "[P]rurient sexual nature" is construed to include performances that apply to a normal and healthy interest in eroticism and sexuality.

58.     The SBA's Adult Business Restriction constitutes a content-based speech ban (likely to cause the permanent cessation of the performances of affected businesses) because, to enforce it, the SBA must look to the content of Plaintiffs' speech, here dance.

59.     The SBA does not have a compelling interest to prohibit Plaintiffs' otherwise eligible small businesses from obtaining loans under the PPP. In fact, neither the SBA nor the government of the United States have any legitimate interest at all in denying otherwise generally-available benefits to businesses merely because they present performances appealing to a normal and healthy interest in sexuality.

60.     Furthermore, the SBA's means—a complete prohibition—are not narrowly tailored. Less intrusive means other than a complete ban do exist.

61.     Accordingly, the SBA's Restriction found in 13 C.F.R. 120.110 (p) is an unconstitutional content-based speech prohibition.

62.     The statute contemplates that, in the absence of this kind of relief, the current economic situation will cause the destruction of affected businesses. The policy of the SBA alleged herein works as a closure of the affected businesses by denying them the kind of emergency relief extended to virtually all other lawful small, American businesses based "pure and simple" on the kind of expression they convey and the Defendants intend, on information and belief, in light of the facts and circumstances known to the SBA, the destruction of the applicants' businesses and the cessation of the kind of live entertainment they provide, to the extent of the power of the SBA to effect.

63.     It is clearly not the intent of Congress in enacting the PPP to subsidize or encourage any particular kind of expression, speech, or business enterprise, but instead to advance exclusively economic goals, to broadly and boldly advance the aim of saving essentially all American small businesses and the jobs they provide to working Americans, without preference, favor, discrimination, selection, or exclusion based on their expression. In the context of such broad economic relief to the widest segment of small businesses, it is beyond the constitutional power of Congress to do otherwise, and it is beyond the power of the Defendants to so regulate.

## COUNT II

### VIOLATION OF THE DUE PROCESS CLAUSE
### OF THE FIFTH AMENDMENT TO THE U.S. CONSTITUTION

64.     Plaintiff incorporates by reference paragraphs "1" through "63" as if fully restated herein.

65.     Under the statute and regulations previously alleged herein, the Defendants have been authorized to create and administer a program of general economic relief, widely available to a large and nearly universal class of small and medium-sized businesses. It is the aim of the program established under the statute and regulations to save and preserve the operations of a wide and general class of such businesses during the present pandemic against the sure knowledge that a substantial portion of them, without such relief, will be unable to survive as viable businesses as a result of the pandemic.

66.     This civil action deals with the adverse and disparate exclusion of Plaintiff which, on information and belief, the SBA will deny benefits and cause the economic destruction of the Plaintiff's business while assisting the future survival and prosperity of the large majority of small and medium-sized businesses in the United States which do not provide similar content of expression.

67.     The result of the Defendants' conduct described herein is a content-based discrimination aimed at the economic destruction of such businesses during a prolonged period during which the Plaintiff is prohibited by law and government regulation from performing its business of conducting public performances.

68.     The PPP program here at issue was not intended as a subsidy to any select program or programs, but as a broad from of relief intended to benefit all businesses of a certain size unless particularly excluded.

69.     The Due Process Clause of the Fifth Amendment declares that no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. Amend.V. Included within the Fifth Amendment's Due Process Clause are the same equal protection principles contained in the Fourteenth Amendment's Equal Protection Clause.

70.     The injury in fact in an equal protection case of this variety is the denial of equal treatment of Plaintiff and access to the PPP benefits at issue herein because of the nature of its speech.

71.     SBA's PPP benefits are available to all businesses, including 501(c)(3) nonprofits, veterans organizations, and faith based groups. But, on information and belief, the SBA prevents businesses that engage primarily in "adult" activity from obtaining these loans. 13 C.F.R. 120.110(p).

72.     Here, the SBA's Restriction in 13 C.F.R. 120.110(p) treats differently those who are exercising their constitutional right to free speech from those who are not. In fact, those exercising the constitutional rights described herein are completely prohibited from obtaining these PPP loans. Other small businesses are not.

73.     This is an unconstitutional distinction prohibiting those who exercise fundamental constitutional rights from obtaining much needed loans while allowing those who do not exercise fundamental constitutional rights to obtain them. This improperly violates the equal protection component of the Fifth Amendment's Due Process Clause.

74.     Like other small businesses that are coping with the economic impact of COVID-19, Plaintiff is in dire need of an infusion of funds and is otherwise eligible for loans through the PPP. The SBA prohibits Plaintiff from obtaining this necessary cash infusion because Plaintiff exercises its fundamental constitutional rights. This violates the equal protection component of the Fifth Amendment.

{H2628038.5}                                        13

75.     The Equal Protection Clause requires that statutes affecting First Amendment interests be narrowly tailored to their legitimate objectives.

76.     A complete prohibition of adult-oriented businesses is not narrowly tailored. The government does not have a legitimate interest during this global pandemic in preventing small businesses from obtaining much needed cash to cover payroll and health insurance for their employees just because these small businesses exercise fundamental constitutional rights.

77.     The Regulations and the SOP violate and are contrary to the First Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous reasons including but not limited to:

   a) They are impermissible content-based restrictions on expression that do not pass muster under either strict scrutiny or intermediate scrutiny;

   b) They treat the performances at Plaintiff's business establishment as though they were obscene, and in so doing, fail to conform to the constitutional standards by which obscenity is defined and regulated;

   c) They violate the doctrine of unconstitutional conditions; and

   d) They are unconstitutionally vague under the vagueness standards for matters impacting speech and expression.

78.     The Regulations and the SOP violate and are contrary to the Fifth Amendment of the United States Constitution, on their face and as applied to Plaintiff, for numerous additional reasons including but not limited to:

   a) They treat establishments presenting certain forms of performance dance entertainment, such as Plaintiff, differently and disparately without lawful justification

from establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

b) They treat workers at establishments presenting certain forms of performance dance entertainment, such as the one operated by the Plaintiff, differently from workers at establishments presenting other forms of entertainment or no entertainment, for no compelling, important, or rational reason;

c) They violate the rights of Plaintiff, its employees, and the entertainers who perform on its premises under the occupational liberty component of the Fifth Amendment; and

d) They are impermissibly vague.

79.    Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including the Plaintiff, the SBA lacked authority to promulgate regulations with restricted or otherwise "clarified" what businesses were eligible for PPP loans.

## COUNT III

### DECLARATORY JUDGMENT
### THE INVALIDITY OF THE REGULATIONS AND SOP

80.    Plaintiff incorporates by reference paragraphs "1" through "79" as if fully restated herein.

81.    Because it is clear and unambiguous as to which businesses are eligible for PPP loans under the CARES Act, including the Plaintiff, the SBA and its Administrator lacked authority to promulgate regulations with restricted or otherwise "clarified" what businesses were eligible for PPP Loans in the manner the Defendants have done, to the exclusion of the Plaintiff from those benefits.

82.     The Regulations and the SOP, if understood to exclude businesses providing entertainment of a nature that appeals to a natural and healthy interest in sex from the benefits of the PPP Program, fail to serve any legitimate regulatory purpose entrusted to the SBA or its Administrator regarding the PPP provision of the CARES Act or otherwise.

83.     The SBA or its Administrator failed to articulate a sufficient regulatory purpose for promulgating the Regulations or the SOP, either in general or specifically as to the PPP provisions of the CARES Act, insofar as they work to exclude businesses providing entertainment of a nature that appeals to a natural and healthy interest in sex.

84.     As a direct and proximate result of the invalid portions of the Regulations and SOP and the Defendants' and their delegates' application of the Regulations and the SOP against Plaintiff and its interests, Plaintiff, its employees, the entertainers who perform on Plaintiff's premises, and the general public have suffered and will continue to suffer irreparable injuries including but not limited to financial ruin, business ruination, and the permanent loss of an uncommon venue of expression in the Town of Cheektowaga.

85.     By reason of the foregoing, the Plaintiff is entitled to a declaration that the Defendants have (a) invalidly exceeded their authority to regulate under the CARES Act, (b) have invalidly and without power to do so defied the manifest intention of Congress expressed in the enactment of the CARES Act, (c) have acted without valid, germane, or reasonable findings or determinations of fact and without a constitutionally permissible purpose, and (d) they have otherwise violated the First and Fourteenth Amendments to the United States Constitution.

## COUNT IV

## PERMANENT INJUNCTION

86.     Plaintiff incorporates by referenced paragraphs "1" through "85" as if fully repeated herein.

87.     Plaintiff has demonstrated that Defendants' above-described conduct is unconstitutional and contravenes the express authority of Congress in enacting the CARES Act and creating the PPP, and that the instant action has a likelihood of success.

88.     Without the funding requested under the PPP, Plaintiff will be unable to pay wages to employees, Plaintiff's business will fail and Plaintiff will suffer irreparable injury.

89.     An injunction will serve the public interests in funding a small business in desperate need of financial assistance and will cause no substantial harm to the Defendants.

90.     As such, a permanent injunction should issue (a) permanently preventing Defendants from enforcing the above-described funding limitation which is contrary to the express will of Congress and injurious to constitutionally protected expression and (b) directing Defendants to transfer PPP loan guarantee authority to Plaintiff's lender.

## COUNT V

## ATTORNEY'S FEES AND COSTS
## UNDER 42 U.S.C. § 1988

91.     Plaintiff repeats and incorporates paragraphs "1" through "90" as if fully set forth herein.

92.     42 U.S.C. § 1988(b) provides, in relevant part, as follows: "In any action or proceeding to enforce a provision of [42 U.S.C. § 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs[.]"

93.     The Supreme Court, in *Hutto v. Finney*, 437 U.S. 678 (1978), affirmed the Court's discretion to award attorney's fees to the prevailing party under 42 U.S.C. § 1988, in actions where a plaintiff is seeking redress for the deprivation of constitutional rights under 42 U.S.C. § 1983.

94.     Here, Plaintiff's Counts I and II are each brought to enforce a provision of 42 U.S.C. § 1983 – namely, that Defendants have subjected Plaintiff to the egregious deprivation of certain rights, privileges, and immunities secured by the United States Constitution. *See 42 U.S.C. § 1983.*

95.     Therefore, Plaintiff requests the reimbursement of the attorney's fees required to be expended to vindicate Plaintiff's constitutional rights.

## CONDITIONS PRECEDENT

96.     All conditions precedent to this action, within the meaning of Rule 9(c) of the Federal Rules of Civil Procedure, have been performed or otherwise occurred.

## DEMAND FOR JURY TRIAL

97.     Plaintiff demands a jury trial of all issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court grant judgment against the Defendants as follows:

98.     Pursuant to 28 U.S.C. 2201 and 2202, declare unconstitutional the Paycheck Protection Program's Adult Business Restriction contained in 13 C.F.R. 120.110(p), as applied to Plaintiff because the Adult Business Restriction violates the First, Fifth, and Fourteenth Amendments to the U.S. Constitution.

99.     In the alternative, pursuant to 28 U.S.C. 2201 and 2202, declare that use of the word "prurient" in any of the regulations at issue herein be construed as having the same meaning and definition as determined by prior decisions of the United States Supreme Court, and inapplicable

to lawfully operating and licensed business establishment such as Pharaohs presenting presumptively protected First Amendment dance performances, such as Plaintiff.

100.    Issue Orders granting a Preliminary Injunction and Permanent Injunction enjoining the Defendants, as well as their employees, agents and representatives, including the SBA's lending banks, from enforcing or utilizing in any fashion or manner whatsoever, 13 C.F.R. § 120.110(p) and SBA SOP 50 10 5(K), Ch. 2(III)(A)(15)  to deny the Plaintiff's loan applications made pursuant to the Payroll Protection Program of the CARES Act and otherwise mandating the preservation of sufficient funds to satisfy the PPP Program loan application of the Plaintiff until such funds are disbursed to it, mandating also that such firnds shall not be distributed or otherwise disbursed to anyone other than the Plaintiff without the prior Order of this Court;

101.    As part of those Orders, order the Defendants, as well as their employees, agents and representatives, to notify, as expeditiously as possible, all SBA lending banks to immediately discontinue utilizing 13 C.F.R. 120.110(p) and/or SBA SOP 50 10 5(K), Ch. 2(III)(A)(15) as criteria for determining PPP loan application eligibility, and to fully process all PPP loan applications without reference to such regulations and procedures;

102.    As a further part of those Orders, order the Defendants, as well as their employees, agents and representatives, including the SBA's lending banks, to restore Plaintiff to the place in the application queue as they were at the time of application in the event that their applications have already been formally denied, derailed, or paused because of the challenged regulations and procedures challenged here;

103.    Award monetary damages in amounts that will fairly compensate the Plaintiff for their injuries; and

104.    Award Plaintiff reasonable attorneys' fees.

.

DATED: June 2, 2020                                    HOGANWILLIG, PLLC

                                                       */s/Edward P. Yankelunas, Esq.*
                                                       Edward P. Yankelunas, Esq.
                                                       *Attorneys for Plaintiff*
                                                       2410 North Forest Road, Suite 301
                                                       Amherst, New York 14068
                                                       (716) 636-7600