# APPENDIX A

# SBA

SOP 50 10 5(K)

# Lender and Development Company Loan Programs

Office of Financial Assistance

U.S. Small Business Administration



# SMALL BUSINESS ADMINISTRATION
# STANDARD OPERATING PROCEDURE

| SUBJECT: | S.O.P. | | REV |
|---|---|---|---|
| Lender and Development Company Loan Programs | SECTION 50 | NO. 10 | 5(K) |

## INTRODUCTION

1. Purpose: Update SOP 50 10 5(K) Lender and Development Company Loan Programs.
2. Personnel Concerned: All SBA Employees
3. SOP Canceled: None. Previous edition of SOP 50 10 will continue to have applicability to loans that were approved during their effective time periods.
4. Updated Information: This full update of SOP 50 10 5 is necessary for the SOP to conform to recently revised regulations in 13 CFR Part 120, and to provide guidance that clarifies and streamlines policy and procedures affecting the 7(a) and 504 programs. This version, which will be SOP 50 10 5(K), includes revised guidance in the following general areas:

   a) Incorporates regulatory changes published in the May 7, 2018, Final Rule on Debt Refinancing in 504 Loan Program (83 FR 19915), effective June 6, 2018;

   b) Incorporates the availability of 504 Debentures with a maturity of 25 years, in accordance with the Federal Register Notice published April 4, 2018, available for 504 Projects approved on or after April 2, 2018;

   c) Incorporates policy changes published in SBA Policy Notice 5000-17057, effective April 3, 2018, including:

      i. Revised guidance on credit elsewhere for 7(a) and 504 loans;

      ii. Clarified the minimum equity requirements for 7(a) loans involving change of ownership transactions between existing owners;

      iii. Provided additional guidance regarding the eligibility of marijuana-related businesses and hemp-related businesses; and

      iv. Reduced the minimum monitoring requirements for Working Capital CAPLines; and

   d) Clarifies guidance for SBA Lenders (7(a) lenders and CDCs) on the delivery of 7(a) loans (including SBA Express, Export Express, Export Working Capital Program and International Trade) and 504 program loans.

5. Originator: Office of Capital Access

| AUTHORIZED BY: | | EFFECTIVE DATE |
|---|---|---|
| William M. Manger<br>Associate Administrator<br>Capital Access | | April 1, 2019 |
| | | Page 1 |


Federal Recycling Program   Printed on Recycled Paper

SOP 50 10 5(K)

# TABLE OF CONTENTS

SUBPART A SBA LENDER AND CERTIFIED DEVELOPMENT COMPANY PARTICIPATION REQUIREMENTS .................................................................................... 7
   PURPOSE OF THIS SUBPART ........................................................................................... 7
   **CHAPTER 1: 7(a) LENDERS** ............................................................................................. 8
      I.   THE 7(A) LOAN PROGRAM ............................................................................ 8
      II.   BECOMING A 7(A) LENDER .......................................................................... 8
      III.   HOW SBA OVERSEES 7(A) LENDERS ........................................................ 17
      IV.   DELEGATED AUTHORITY IN THE 7(A) LOAN PROGRAM ...................... 22
   CHAPTER 2: SMALL BUSINESS LENDING COMPANIES ............................................. 40
      I.   SMALL BUSINESS LENDING COMPANIES ("SBLC") 13 CFR §§ 120.460-120.490 .................................................................................................................. 40
      II.   PROCESS FOR ACQUIRING AN SBLC ........................................................ 41
   CHAPTER 3: CERTIFIED DEVELOPMENT COMPANIES ............................................. 45
      I.   THE 504 LOAN PROGRAM ............................................................................ 45
      II.   BECOMING A CDC AND OPERATIONAL REQUIREMENTS .................. 45
      III.   THE PROCESS OF APPLYING TO BECOME A CDC ................................ 60
      IV.   SBA OVERSIGHT OF CDCs .......................................................................... 63
      V.   TYPES OF CDCS ............................................................................................. 70
      VI.   AREA OF OPERATIONS ................................................................................ 81
SUBPART B SECTION 7(A) BUSINESS LOAN PROGRAMS ................................................ 88
   PURPOSE OF THIS SUBPART ......................................................................................... 88
   CHAPTER 1: GENERAL DESCRIPTION OF THE 7(A) LOAN PROGRAMS ................ 89
      I.   LOAN PROCESSING DELIVERY METHODS ............................................. 89
      II.   USE OF 7(A) LOAN PROCEEDS ................................................................... 89
      III.   SPECIAL PURPOSE LOANS ......................................................................... 89
      IV.   DEFINITIONS APPLICABLE TO THE 7(A) LOAN PROGRAMS ............. 90
   CHAPTER 2: ELIGIBILITY FOR 7(A) GUARANTY LOAN PROGRAM ....................... 91
      I.   INTRODUCTION ............................................................................................. 91
      II.   ELIGIBILITY REQUIREMENTS FOR ALL 7(A) LOAN APPLICANTS ..... 91
      III.   INELIGIBLE TYPES OF BUSINESSES ...................................................... 104

- IV. ADDITIONAL ELIGIBILITY REQUIREMENTS FOR CERTAIN SBA 7(A) LOAN DELIVERY METHODS .................................................................................................... 126
- V. ELIGIBLE USES OF LOAN PROCEEDS (13 CFR §§ 120.120, 120.202, and 120.332) ...................................................................................................................... 128
- CHAPTER 3: LOAN TERMS AND CONDITIONS ........................................................ 146
  - I. MAXIMUM LOAN AMOUNTS ................................................................................ 146
  - II. MAXIMUM GUARANTY AMOUNTS ..................................................................... 146
  - III. LOAN MATURITIES (13 CFR § 120.212) .............................................................. 148
  - IV. INTEREST RATES ................................................................................................... 152
  - V. SBA GUARANTY FEES (13 CFR § 120.220) ......................................................... 159
  - VI. FEES LENDERS AND/OR THIRD PARTIES MAY COLLECT FROM AN APPLICANT (13 CFR § 120.221): .......................................................................... 165
  - VII. PROHIBITED FEES. ................................................................................................ 169
  - VIII. DISCLOSURE OF FEES AND LENDER EXPENSES (13 CFR Part 103 and 13 CFR §120.221). ............................................................................................................... 169
  - IX. AGENTS. ................................................................................................................... 171
  - X. WHO MAY CONDUCT BUSINESS WITH SBA (13 CFR § 103.2) ...................... 173
- CHAPTER 4: CREDIT STANDARDS, COLLATERAL AND ENVIRONMENTAL POLICIES .............................................................................................................................. 177
  - I. CREDITWORTHINESS/CREDIT UNDERWRITING .............................................. 177
  - II. GUARANTIES AND COLLATERAL ....................................................................... 191
  - III. ASSIGNMENT OF LEASE AND LANDLORD'S WAIVER ................................... 200
  - IV. REAL ESTATE APPRAISAL AND BUSINESS VALUATION REQUIREMENTS .................................................................................................................................... 201
  - V. ENVIRONMENTAL POLICIES AND PROCEDURES ........................................... 205
- CHAPTER 5: LOAN AUTHORIZATION ........................................................................ 214
  - I. BASIC LOAN CONDITIONS (13 CFR § 120.160): ................................................. 214
  - II. CONSTRUCTION LOAN PROVISIONS (13 CFR § 120.174) ............................... 215
  - III. INSURANCE REQUIREMENTS .............................................................................. 217
  - IV. IRS TAX TRANSCRIPT/VERIFICATION OF FINANCIAL INFORMATION .... 217
  - V. SPECIAL PROVISION FOR CAPLINES ................................................................. 220
  - VI. SPECIAL PROVISION FOR FRANCHISE ............................................................. 220
  - VII. MODIFYING THE AUTHORIZATION ................................................................... 220

SOP 50 10 5(K)

CHAPTER 6: SUBMISSION OF APPLICATION FOR GUARANTY .................................. 221
   I.   CONTENTS OF LENDER'S APPLICATION FOR GUARANTY: ............................ 221
   II.  WHERE TO SUBMIT APPLICATION FOR GUARANTY ...................................... 226
CHAPTER 7: POST-APPROVAL MODIFICATIONS, LOAN CLOSING & DISBURSEMENT .................................................................................................................. 228
   I.   POST-APPROVAL/PRE-DISBURSEMENT REQUESTS FOR CHANGES ............. 228
   II.  TRANSFER OF GUARANTY BETWEEN PARTICIPATING LENDERS ............... 231
   III. PAYMENT OF GUARANTY FEE ............................................................................ 231
   IV. LOAN CLOSING AND DISBURSEMENT .............................................................. 231
CHAPTER 8: POST-DISBURSEMENT CHANGES, SECONDARY MARKET, SECURITIZATION AND LENDER REPORTING (SBA FORM 1502) ............................... 255
   I.   POST-DISBURSEMENT CHANGES ........................................................................ 255
   II.  SECONDARY MARKET FOR SBA-GUARANTEED LOANS ................................ 255
   III. SECONDARY MARKET RESOURCES: .................................................................. 256
   IV. LOAN TRANSFERS: ................................................................................................. 256
   V.  LOAN PARTICIPATION SALES .............................................................................. 257
   VI. SECURITIZATION AND OTHER CONVEYANCES ............................................. 258
   VII. LENDER LOAN REPORTING ................................................................................. 260
SUBPART C SECTION 504 CERTIFIED DEVELOPMENT COMPANY LOAN PROGRAM 262
PURPOSE OF THIS SUBPART ........................................................................................... 262
CHAPTER 1: GENERAL PROVISIONS ............................................................................ 263
   I.   PURPOSE OF THE 504 CERTIFIED DEVELOPMENT COMPANY LOAN PROGRAM ................................................................................................................. 263
   II.  CREDIT STANDARDS (13 CFR § 120.150) ............................................................. 263
   III. DEFINITIONS ............................................................................................................. 263
   IV. HOW A 504 PROJECT IS FINANCED .................................................................... 265
CHAPTER 2: ELIGIBILITY .................................................................................................. 274
   I.   INTRODUCTION ........................................................................................................ 274
   II.  ELIGIBILITY REQUIREMENTS FOR ALL 504 APPLICANTS ........................... 274
   III. TYPES OF INELIGIBLE BUSINESSES .................................................................. 287
   IV. 504 PROGRAM-SPECIFIC ELIGIBILITY FACTORS ........................................... 309
CHAPTER 3: COLLATERAL, APPRAISALS AND ENVIRONMENTAL POLICIES ........ 324

SOP 50 10 5(K)

| | | |
|---|---|---|
| I. | COLLATERAL | 324 |
| II. | APPRAISAL REQUIREMENTS | 327 |
| III. | ENVIRONMENTAL POLICIES AND PROCEDURES | 328 |

**CHAPTER 4: LOAN APPLICATION PROCEDURES AND CONTROLS .......... 337**

| | | |
|---|---|---|
| I. | CDC'S 504 APPLICATION | 337 |
| II. | MINIMUM DEBENTURE AMOUNT | 337 |
| III. | SUBMITTING THE APPLICATION | 337 |

**CHAPTER 5: LOAN CONDITIONS/AUTHORIZATION REQUIREMENTS ....... 340**

| | | |
|---|---|---|
| I. | AUTHORIZATION BOILERPLATE/WIZARD | 340 |
| II. | MODIFYING THE AUTHORIZATION | 347 |

**CHAPTER 6: CLOSINGS .......... 349**

| | | |
|---|---|---|
| I. | RESPONSIBILITY FOR CLOSING THE 504 LOAN AND DEBENTURE | 349 |
| II. | THE CLOSING PACKAGE | 349 |
| III. | SPECIFIC RESPONSIBILITIES AND PROCEDURES FOR CLOSING AND POST-CLOSING ACTIVITIES | 350 |

**CHAPTER 7: DEBENTURE PRICING & FUNDING .......... 355**

| | | |
|---|---|---|
| I. | PRICING A 504 DEBENTURE (13 CFR § 120.931) | 355 |
| II. | FUNDING THE DEBENTURE | 358 |

**CHAPTER 8: ALLOWABLE FEES .......... 360**

| | | |
|---|---|---|
| I. | ALLOWABLE FEES THAT A 504 BORROWER MAY BE CHARGED | 360 |
| II. | FEES FOR OTHER SERVICES | 361 |
| III. | DISCLOSURE OF FEES AND CDC EXPENSES (13 CFR Part 103) | 362 |
| IV. | AGENTS | 363 |
| V. | WHO MAY CONDUCT BUSINESS WITH SBA (13 CFR §103.2) | 364 |

**CHAPTER 9: BORROWER'S DEPOSIT, DEBENTURE POOLS AND POST-DISBURSEMENT ISSUES .......... 366**

| | | |
|---|---|---|
| I. | RULES GOVERNING THE BORROWER'S DEPOSIT | 366 |
| II. | DEBENTURE POOLS | 366 |
| III. | MISCELLANEOUS | 366 |
| IV. | POST-DISBURSEMENT ISSUES | 366 |

**APPENDIX 1: RESTRICTIONS ON FOREIGN CONTROLLED ENTERPRISES ........... 368**
**APPENDIX 2: DEFINITIONS ........... 371**

SOP 50 10 5(K)

APPENDIX 3: RELIANCE LETTER ................................................................................................378
APPENDIX 4: NAICS CODES OF ENVIRONMENTALLY SENSITIVE INDUSTRIES .........381
APPENDIX 5: REQUIREMENTS PERTAINING TO GAS STATION LOANS ........................384
APPENDIX 6: SBA ENVIRONMENTAL INDEMNIFICATION AGREEMENT.....................386
APPENDIX 7: SAMPLE BORROWING BASE CERTIFICATE & REPORT TO LENDER.....408
APPENDIX 8: REQUIREMENTS FOR ELECTRONIC SIGNATURES IN THE 7(A) AND 504 LOAN PROGRAMS ................................................................................................................416

accorded to each class of stock or members interest (including voting rights, redemption rights, and rights of convertibility) and conditions for transfer, sale, or assignment of these interests;

4. The proposed SBLC's geographic area of operation;

5. Identification of all officers, directors, managing partners, managing members, ==key employee(s) of lender (an employee who manages daily operations, e.g., overseeing a department or a division, not a clerical staff position)==, and all other individuals or entities that propose to hold an equity interest of at least 10% of the economic interest in any class of stock or ownership interest in the proposed SBLC (such identification should include a discussion of any prior SBA experience);

    a. An organization chart showing the relationship of the proposed SBLC with all related associates and affiliates within the organization;

    b. All individuals or entities identified in paragraph 5 above must submit an executed SBA Form 1081 and either a Form FD-258 (fingerprint card) or electronic fingerprint submission. "Electronic fingerprint submission" is defined in Subpart B, Chapter 2, Paragraph III.A.13.d.iv of this SOP. SBA Form 1081 and the Form FD-258 or electronic fingerprint submission must be signed and dated within 90 days of submission to SBA.

    c. A director or key employee of the lender organization is only required to submit either Form FD-258 (fingerprint card) or electronic fingerprint submission if the director or key employee answered affirmatively to questions 10a, 10b, 10c, 11a and/or 11b on the SBA Form 1081.

6. Proof of fidelity insurance coverage as detailed in 13 CFR § 120.470(e).

7. A comprehensive business plan that details:

    a. The nature of proposed operations, including the organizational units involved in sourcing, evaluating, underwriting, closing, disbursing servicing and liquidating small business loans in the organization;

    b. The identification of all sources of capital used to finance lending operations;

    c. An operations plan detailing the nature of the Lender's proposed loan activity, the volume of activity projected over the first 3 years as an SBA Lender, projected balance sheets, income statements and statement of cash flows of the Lender, with alternative profit and loss scenarios based on run rates equivalent to 70% and 50% of projected loan activity, the type and projected amount of financing needed to support its lending plan, along with a discussion of Lender's proposed wind-down plan in the event the Lender decides to leave the program;

    d. A detailed analysis of the Lender's projected secondary market activities during the first 3 years of operation, including a sensitivity analysis of the effect any changes in premium from the sale of the guaranteed portion of 7(a) loans in SBA's secondary market may have on the Lender's prospective earnings. The analysis must also include a description of the Lender's plans (if any) to securitize or sell participations in the unguaranteed portion of 7(a) loans; and

    e. If the Lender intends to acquire any 7(a) loans, a written plan detailing the extent of this acquisition activity in its operating plan, and how the Lender will manage the transition of the 7(a) loan portfolio;

8. All documents associated with any type of external financing expected to be undertaken by the

  iii. A small business is acquiring another small business through an asset purchase;

  iv. An Employee Stock Ownership Plan (ESOP) or equivalent trust is purchasing a controlling interest (51%) in the employer (Note: any transaction costs associated with the purchase of the controlling interest by the ESOP or equivalent trust, but not costs associated with setting up the trust, may be included in the use of proceeds) (13 CFR § 120.352(b));

  v. A small business is obtaining a loan for the sole purpose of re-lending the funds to an ESOP or equivalent trust to acquire a controlling interest in the small business (Note: any transaction costs associated with making the loan to the ESOP or equivalent trust, but not the costs associated with setting up the trust, may be included in the use of proceeds); or

  vi. A cooperative is purchasing a controlling interest (51%) in the employer (Note: any transaction costs associated with the purchase of the controlling interest, but not costs associated with setting up the cooperative, may be included in the use of proceeds).

2. The seller may not remain as an officer, director, stockholder or ==key employee (an employee who manages daily operations, e.g. overseeing a department or a division, not a clerical staff position)== of the business. (13 CFR § 120.130) If a short transitional period is needed, the small business may contract with the seller as a consultant for a period not to exceed 12 months including any extensions.
When the purchaser is an ESOP or equivalent trust or a cooperative and is acquiring a controlling interest (51 percent or more) in the employer business, the seller may stay on as an owner, officer, director, stockholder or key employee of the company; however, any seller who remains as an owner, regardless of percentage of ownership interest, must provide their guaranty in accordance with the requirements of Chapter 4, Paragraph II.A. of this Subpart.

3. An SBA-guaranteed loan cannot be made solely to an individual. The small business must be either the Borrower or a Co-Borrower as follows:

  a. In a change of ownership under section V.H.1.b.i. or V.H.1.c.ii. above, the small business and the individual owner(s) must be co-Borrowers. In addition, the Note must be executed, jointly and severally, by both the individual(s) who acquires the ownership interest(s) and the small business whose ownership interest is being acquired. If the small business denies liability for the debt based on an alleged failure of consideration under applicable state law, SBA may deny liability on its guaranty.

  b. In a change of ownership under section V.H.1.b.ii. above, the small business must be the Borrower and the Lender may require the remaining owner(s) to be Guarantor(s) in accordance with the requirements for personal guaranties set forth in Chapter 4, Paragraph II of this Subpart. In a change of ownership under section V.H.1.c.i. or c.iii. above, the acquiring entity may be the Borrower or the acquiring entity and the small business being acquired may be Co-Borrowers.

4. The Lender must comply with the requirements for IRS verification identified in Chapter 5

collateral must be taken to secure a loan are based on the circumstances of the individual loan, including size, and must meet the minimum requirements set forth in this section.

2. Adequacy of Collateral

   a. A loan request is not to be declined solely on the basis of inadequate collateral. In fact, one of the primary reasons Lenders use the SBA-guaranteed program is for those Applicants that demonstrate repayment ability but lack adequate collateral to repay the loan in full in the event of default. However, SBA does not permit its guaranty to be a substitute for available collateral.

   b. When assessing the adequacy of collateral, the Lender must consider the impact that covenants and other restrictions recorded against the collateral may have on its value and marketability. (See Chapter 2, Paragraph II.D.8 of this Subpart for guidance on covenants and other restrictions recorded against the collateral when the Applicant is operating under a franchise agreement.) The Lender must document this analysis in the file. Examples of items to review include:

      i. Deed restrictions, covenants, easement provisions, reversionary interests, subordinations, leases and options, and other provisions that restrict the use of the property for the benefit of a third party (note: certain deed restrictions pertaining to the use of the property, which are intended to protect the health and safety of occupants, may be acceptable, e.g., deed restrictions based upon environmental concerns including restrictions on residential use, use as a day care center for children or seniors, use as a school, or use as a hospital); and

      ii. Engineering Controls that require the Applicant or subsequent owners to install costly devices or structures such as extraction wells or subsurface barrier walls prior to constructing a building, remodeling, or otherwise improving the property.

3. Collateral Requirements for 7(a) Small Loans.

   a. For loans of $25,000 or less, the Lender is not required to take collateral. (personal guaranties must still be obtained in accordance with paragraph A above); and

   b. For loans over $25,000, up to and including $350,000, the Lender must follow the collateral policies and procedures that it has established and implemented for its similarly-sized non-SBA guaranteed commercial loans, but at a minimum:

      i. Lender must take a first lien on assets financed with loan proceeds;

      ii. Lender must take a lien on all of the Applicant's fixed assets, including real estate, up to the point that the loan is fully secured, based on the collateral valuations used in paragraph 4.a) below. Lender is not required to take a lien against Applicant's real estate when the equity is less than 25% of the fair market value. The Lender may limit the lien taken against real estate to the amount necessary to ensure the loan is fully secured; and

      iii. Lender may secure Applicant's trading assets if it does so for its similarly-sized non-SBA guaranteed commercial loans. Lender may also take personally-owned investment and/or residential real estate as collateral, and

SOP 50 10 5(K)                                                                                      Subpart B

B. Delegated Lenders processing loans under their delegated authority must obtain and retain the documentation listed below in their file.

C. With the exception of 7(a) Small Loans, for all loans submitted using the non-delegated process through the LGPC (including loans from delegated Lenders using this processing method), Lender must obtain and retain in its file all documentation listed below. In addition, Lender must submit as part of the Application for guaranty those items below emphasized in **bold**.

   1. Lender must complete and sign SBA Form 1920.
   2. Applicants and Associates must complete and sign SBA Form 1919, "Borrower Information Form." SBA Form 1919 must be signed by the following:
      a. For a sole proprietorship, the sole proprietor;
      b. For a partnership, all general partners, and all limited partners owning 20% or more of the equity of the firm, or any partner that is involved in management of the applicant business;
      c. For a corporation, all owners of 20% or more of the corporation and each officer and director;
      d. For limited liability companies (LLCs), all members owning 20% or more of the company and each officer, director, and managing member;
      e. ==Any person hired by the business to manage day-to-day operations ("Key Employee"); and==
      f. Any Trustor (if the Small Business Applicant is owned by a trust).

      When 20% or more ownership interest is held by a corporation, partnership or other form of legal entity in the Applicant, OC, or parent company, the ownership interests of all individuals must be disclosed.

      g. When the combined ownership interest between spouses is 20% or more, both spouses must complete SBA Form 1919.

      A separate Section I of SBA Form 1919 is required to be completed and signed for each co-applicant (e.g. Eligible Passive Company (EPC) and Operating Company (OC)).

   3. **Lender's Credit Memo** must address all requirements detailed in Chapter 4, Credit and Collateral.
   4. SBA Form 912:
      a. If questions 17, 18, and 19 of SBA Form 1919 are all answered "no," SBA Form 912 is not required.
      b. If question 17 is answered "yes," the loan is not eligible.
      c. If question 18 or 19 is answered "yes," the Subject Individual must complete SBA Form 912 and Lender must follow the steps as outlined in Chapter 2, Paragraph III.A.13.d of this Subpart prior to submission of the application to the LGPC for a non-delegated loan and prior to submitting the request for a loan number for a delegated loan.

SOP 50 10 5(K)                                                                                                          Subpart C

   If the nature of the business requires a resident owner or manager, loan proceeds may be used for the purchase of an existing building(s) or construction of a new building(s) that includes residential space essential to the business. The square footage of the residential space must be appropriate to the needs of the business, not to exceed 49% of the total property. For example, a horse-boarding facility traditionally requires that someone be on premises at all times to care for the horses. In this case, the residential property would be considered to be occupied by the business.

K. Change of Ownership:

   1. Projects that result in a change of ownership are eligible under the following circumstances:

      a. The 504 Project finances only the costs associated with eligible long-term fixed assets; the acquisition of any other assets such as receivables or goodwill is not an eligible use of 504 loan proceeds or Third Party Loan proceeds and must be financed by other means, which may include a 7(a) loan;

      b. The application documents that jobs will be created or retained because of the change of ownership. The application must demonstrate that there is a reasonable basis upon which to conclude that the retained jobs would be lost without the change of ownership. This can be in the form of a statement from the seller to that effect with supporting facts or other certification acceptable to the SLPC.

   2. The 504 loan proceeds must not be used to purchase stock or any other ownership interest in a business unless, by purchasing the stock or other ownership interest, the Applicant is purchasing the real estate where the Applicant business is located and/or other eligible long-term fixed assets used in the Applicant's business operation. To the extent the value of the stock or other ownership interest exceeds the value of the real estate and/or other eligible long-term fixed assets ("excess value"):

      a. The excess value cannot be financed by the Project financing; it must be financed separately; and

      b. The excess value must be *de minimis* compared to the value of the real estate and/or other eligible long-term fixed asset(s).

   3. The change of ownership must result in the Applicant owning 100% of the business.

   4. The seller may not remain as an officer, director, stockholder or key employee (an employee who manages daily operations, e.g. overseeing a department of a division, not a clerical staff position) of the business.

   5. All other 504 Loan Program Requirements must be met.

L. Loan Proceeds to Finance a Third Party Lender's Other Real Estate Owned (OREO) (13 CFR § 120.923):

   Where loan proceeds will be used to finance a Third Party Lender's own OREO property, the application must:

   1. Be submitted to the SLPC (delegated authority may not be used to process these applications);