UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

PHARAOHS GC, INC.,

        Plaintiff,

    v.                                  20-CV-665
                                          DECISION & ORDER

UNITED STATES SMALL BUSINESS
ADMINISTRATION, et. al,

        Defendants.

_____

On June 2, 2020, the plaintiff, Pharaohs GC, Inc. ("Pharaohs")—an adult-entertainment club—filed a complaint seeking declaratory and injunctive relief. Docket Item 1. According to Pharaohs, it has a statutory and constitutional right to obtain a loan guaranteed by the United States Small Business Administration ("SBA") under the Paycheck Protection Program ("PPP") of the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). *Id.* The bank to which Pharaohs applied for such a loan denied it because businesses that "[p]resent live performances of a prurient sexual nature" are ineligible under 13 C.F.R. § 120.110(p). Docket Item 1 ¶ 45. Pharaohs also has moved for a preliminary injunction. Docket Item 3.[1]

On June 15, 2020, the defendants responded to Pharaohs's motion for a preliminary injunction and moved to dismiss its constitutional claims for lack of standing.

---

[1] Pharaohs initially moved for a temporary restraining order as well but withdrew that request in exchange for the SBA's agreement "to reserve $345,067.50 in PPP loan guarantee authority . . . in order to guarantee the PP[P] Loan for which [Pharaohs] has applied." Docket Item 9 at 2.

Docket Item 13.  In addition to contesting the issues raised in the complaint, the defendants asserted that Pharaohs "is ineligible for an SBA-backed PPP loan under 13 C.F.R. § 120.110(n) because a key member of its managerial staff"—Anthony Gerace— "is under federal indictment."  Docket Item 15 at 21.  On June 22, 2020, Pharaohs responded to the defendants' motion to dismiss and replied to the defendants' opposition to Pharaohs's motion for a preliminary injunction.  Docket Item 16.  The Court held oral argument on June 24, 2020, and reserved decision.

For the reasons that follow, the Court denies Pharaohs's motion for a preliminary injunction, Docket Item 3, as well as the defendants' motion to dismiss, Docket Item 13.

## **BACKGROUND**

On March 20, 2020, New York State Governor Andrew M. Cuomo signed the "New York State on PAUSE" Executive Order in response to the COVID-19 pandemic. Among other things, the order mandated the statewide closure of all non-essential businesses effective March 22, 2020, at 8:00 p.m.[2]  "Pharaohs has been closed for business since 8 p.m. on March [22], 2020[,[3]] and is currently shuttered as a result of [Cuomo's] Executive Order."  Docket Item 1 ¶ 36.

On March 27, 2020, the CARES Act was signed into law.  Among other things, the CARES Act established the PPP—"a new loan program to be administered by the

---

[2] Executive Order [Cuomo] No. 202.8 (Mar. 20, 2020), https://www.governor.ny.gov/sites/governor.ny.gov/files/atoms/files/EO_202.8.pdf.

[3] Pharaohs's complaint states that it has been closed since March 15, 2020, as a result of the Executive Order, *see* Docket Item 1 ¶ 36, but the Court assumes that is a typographical error.

SBA under Section 7(a) of the Small Business Act (codified at 15 U.S.C. § 636(a)).”

*Diocese of Rochester v. U.S. Small Bus. Admin.*, ––– F. Supp. 3d ––––, ––––, No. 6:20-cv-06243-EAW, 2020 WL 3071603, at *2 (W.D.N.Y. June 10, 2020) (quoting *Camelot Banquet Rooms, Inc. v. U.S. Small Bus. Admin.*, ––– F. Supp. 3d ––––, ––––, No. 20-C-0601, 2020 WL 2088637, at *2 (E.D. Wis. May 1, 2020)).  The PPP’s

> purpose is to assist small businesses during the COVID-19 crisis by immediately extending them loans on favorable terms.  The loans are made by the SBA’s participating banks and guaranteed by the SBA itself.  Section 1106 of the CARES Act provides that a borrower’s indebtedness under a PPP loan will be forgiven to the extent that the borrower uses the funds to pay expenses relating to payroll, mortgage interest, rent, and utilities during the eight-week period following the loan’s origination.  CARES Act § 1106.  If a borrower qualifies for loan forgiveness, the SBA must pay the lender an amount equal to the amount forgiven, plus any interest accrued through the date of payment.  *Id.* § 1106(c)(3).

*Diocese of Rochester*, 2020 WL 3071603, at *2 (quoting *Camelot Banquet Rooms*, 2020 WL 2088637, at *2).  “Congress initially provided the SBA with $349 billion for PPP loan guarantees, but those funds were quickly exhausted, and ‘Congress then appropriated an additional $310 billion for loan guarantees under the PPP.’”  *Id.* (quoting *DV Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, ––– F. Supp. 3d ––––, ––––, No. 20-cv-10899, 2020 WL 2315880, at *3 (E.D. Mich. May 11, 2020) (“*DV Diamond Club I*”)).

On May 21, 2020, Pharaohs applied for a PPP loan through Live Oak Bank. Docket Item 1 ¶ 40.  The bank informed Pharaohs that its application “is on hold—and is not being processed—due to the SBA [regulation, 13 C.F.R. § 120.110(p),] prohibiting

loans to a business such as Pharaohs that presents entertainment of a 'prurient sexual nature.'" Docket Item 1 ¶ 45.[4]

Pharaohs alleges that "[a]s a direct and proximate result of [the] state-ordered closure, [it] has suffered significant business losses, but plans to reopen when legally permitted to do so." *Id.* ¶ 37. That reopening is in jeopardy, Pharaohs says, because its loan request was denied: If Pharaohs "is unable to obtain PPP loans, it may lack the staff and/or funds to reopen following the COVID-19 pandemic, resulting in the permanent ruination of its businesses, the inability of [Pharaohs] to be engaged in protected First Amendment activity, and the inability of [Pharaohs's] staff, entertainers, and customers to continue engaging in or viewing protected First Amendment activity." *Id.* ¶ 52. And so it asks this Court to intervene on its behalf.

## DISCUSSION

## I.    THE PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Monserrate v. N.Y. St. Senate*, 599 F.3d 148, 154 (2d Cir. 2010) (quoting *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)). It "is an equitable remedy and an act of discretion by the court." *Am. Civ. Liberties Union v. Clapper*, 804 F.3d 617, 622 (2d Cir. 2015).

---

[4]  Issued in 1996, 13 C.F.R. § 120.110 "applies to all of [the SBA's] business loan programs, including those under § 7(a) of the Small Business Act—of which the PPP is now a part." *Camelot Banquet Rooms*, 2020 WL 2088637, at *2 (citing Business Loan Programs, 61 Fed. Reg. 3226, 3227 (Jan. 31, 1996)).

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Trump v. Deutsche Bank AG*, 943 F.3d 627, 640 (2d Cir.), *cert. granted*, 140 S. Ct. 660 (2019) (quoting *Winter*, 555 U.S. at 20).[5]  Moreover, the Second Circuit has instructed that a mandatory injunction—that is, an injunction commanding a positive act, as opposed to one that merely maintains the status quo—"should issue 'only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 34 (2d Cir. 1995) (quoting *Abdul Wali v. Coughlin*, 754 F.2d 1015, 1025 (2d Cir. 1985)).

Here, Pharaohs argues that the SBA's refusal to guarantee Pharaohs's PPP loan is contrary to Congress's intent and violates Pharaoh's constitutional rights.  Pharaohs thus seeks an injunction compelling the SBA to guarantee its PPP loan.  As explained in more detail below, the Court finds that Pharaohs has not shown—let alone clearly shown—that it is likely to succeed on the merits of its claims.  And for that reason, the

---

[5]  Although the Second Circuit also recognizes a "less rigorous standard" of "sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in their favor," that standard "cannot be used"—as Pharaohs seeks to do here—"to preliminarily enjoin governmental action." *Deutsche Bank*, 943 F.3d at 637 (citations omitted); *see also Able v. United States*, 44 F.3d 128, 131 (2d Cir. 1995) ("As long as the action to be enjoined is taken pursuant to a statutory or regulatory scheme, even government action with respect to one litigant requires application of the 'likelihood of success' standard.").

Court need not and does not address the remaining requirements for a preliminary injunction.[6]

### A.    SBA Regulation 13 C.F.R. § 120.110

The Administrative Procedure Act ("APA") prohibits agencies—including the SBA—from taking action "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C). Courts evaluate challenges to an agency's interpretation of a statute that it administers under the two-step framework established in *Chevron, U.S.A., Inc. v. National Resources Defense Council, Inc.*, 467 U.S. 837 (1984). *See Catskill Mountains Chapter of Trout Unlimited, Inc. v. E.P.A.*, 846 F.3d 492, 507 (2d Cir. 2017), *cert. denied sub nom. New York v. E.P.A.*, —— U.S. ——, 138 S. Ct. 1164 (2018), and *cert. denied sub nom. Riverkeeper, Inc. v. E.P.A.*, —— U.S. ——, 138 S. Ct. 1165 (2018). At step one, the court examines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842-43. But "if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. In that instance, the agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

---

[6] The Court also need not and does not address the defendants' argument that the Small Business Act prohibits the Court from entering an injunction against the SBA. *See* Docket Item 15 at 36-37.

The CARES Act provides:

> During the covered period, in addition to small business concerns, *any business concern*, nonprofit organization, veterans organization, or Tribal business concern described in section 657a(b)(2)(C) of this title shall be eligible to receive a [PPP] loan if the business concern, nonprofit organization, veterans organization, or Tribal business concern employs not more than the greater of-
>
>> (I) 500 employees; or
>>
>> (II) if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i)(I), (II) (emphasis added).  Pharaohs argues that based on this statutory text, the CARES Act unambiguously makes PPP loans available to *any* business so long as the business operated during the covered period and meets the size requirements.  Docket Item 3-6 at 5.  Thus, according to Pharaohs, 13 C.F.R. § 120.110—which deems certain types of businesses ineligible for PPP loans— contravenes Congress's clear intent and therefore is invalid under the APA.  Docket Item 3-6 at 4-5.  The defendants counter that, when read in context, "any business concern" merely expands eligibility for the PPP beyond "small business concerns." Docket Item 15 at 15.

Courts have gone both ways on whether the SBA's eligibility requirements for a PPP loan contradict the plain text of the CARES Act.  At least two courts have held that the SBA's exclusion of businesses providing entertainment of a "prurient sexual nature" is contrary to Congress's intent in passing the CARES Act.  *See DV Diamond Club I*, 2020 WL  2315880; *Camelot Banquet Rooms*, 2020 WL 2088637; *see also DV*

*Diamond Club of Flint, LLC v. U.S. Small Bus. Admin.*, 960 F.3d 743 (6th Cir. 2020)

("*DV Diamond Club II*") (denying stay pending appeal).   But other courts, including one

in this district, have recently held that the SBA did not exceed its authority in barring

certain organizations from obtaining PPP loans.   *See Diocese of Rochester*, 2020 WL

3071603 (Wolford, *J.*); *see also Tradeways, Ltd. v. U.S. Dep't of Treasury*, No. CV ELH-

20-1324, 2020 WL 3447767 (D. Md. June 24, 2020*).*

After careful consideration, this Court agrees with the latter set of cases, largely

based on the analysis in *Diocese of Rochester*.   There, Judge Wolford acknowledged

that "[t]he reasoning employed by the *DV Diamond* court, among others, is not

unpersuasive on its face."   *Id.* at *6.   According to those courts, "when Congress says

'any business concern, nonprofit organization, veterans organization, or Tribal business

concern,' it means *any*."   *Id.* (emphasis in original).   But, Judge Wolford continued, "[i]n

making the threshold determination under *Chevron*, a reviewing court should not

confine itself to examining a particular statutory provision in isolation."   *Id.* (quoting *Nat'l

Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 666 (2007)).   "And in this

case, when examined in the context of the statutory scheme as a whole, it becomes

clear that 15 U.S.C. § 636(a)(36)(D)(i) is properly understood not as setting forth the

exclusive criteria for participation in the PPP, but merely as expanding the size

limitations that would otherwise have been in place."   *Diocese of Rochester*, 2020 WL

3071603, at *6.

More specifically, Judge Wolford explained:

> Under normal circumstances, loans under Section
> 7(a) are available only to "small business concerns," as
> defined in applicable SBA regulations.   *See* 15 U.S.C.
> § 632(a)(1); *id.* § 636(a); *see, e.g.*, How Does SBA Define

"Business Concern or Concern"?, 13 C.F.R. § 121.105 (2005).  In establishing the PPP, Congress expanded the size restrictions found in those regulations to allow larger businesses to qualify for participation.  *See* 15 U.S.C. § 636(a)(36)(D)(i) (providing that larger businesses are eligible for PPP participation "in addition to small business concerns").  However, the Court disagrees with Plaintiffs that in expanding the size restrictions, Congress unambiguously provided that there could be no other eligibility criteria.  *See Schuessler* [*v. U.S. Small Bus. Admin.*, No. AP 20-02065-BHL,] 2020 WL 2621186, at *11 (Bankr. E.D. Wis. May 22, 2020) ("Given . . . the speed with which Congress adopted the CARES Act and wanted funds to be disbursed in the light of the pandemic, it is understandable that Congress did not spell out in the statute all requirements for PPP participation. Instead, Congress entrusted the details to the SBA, engrafting the PPP on to the SBA's existing section 7(a) lending program, and giving the SBA emergency rulemaking authority.").

Other provisions of the CARES Act clearly anticipate the existence of additional eligibility criteria.  For example, § 1102(a)(36)(D)(ii)(I) of the CARES Act provides that "[d]uring the covered period, individuals who operate under a sole proprietorship or as an independent contractor and eligible self-employed individuals shall be eligible to receive a covered loan."  15 U.S.C. § 636(a)(36)(D)(ii)(I).  Further, § 1102(a)(36)(I) of the CARES Act waives the requirement that a small business concern be unable to obtain credit elsewhere in order to be eligible for a covered loan.  15 U.S.C. § 636(a)(36)(I).  These waivers of otherwise applicable eligibility requirements would be superfluous if, in fact, § 1102(a)(36)(D)(i) unambiguously eliminated any requirement beyond size.  It is "one of the most basic interpretive canons . . . that a statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant."  *Corley v. United States*, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (quotation and original alterations omitted).

*Diocese of Rochester*, 2020 WL 3071603 at *6-*7.

Moreover, the sentence in which "any business concern" appears itself suggests

the same conclusion as to the meaning of "any."  By saying "*[i]n addition to small*

9

*business concerns*, any business concern . . . ," that sentence contrasts "any business concern" with "small business concerns."  *Cf. DV Diamond Club II*, 960 F.3d at 747 (Siler, *J.*, dissenting) ("[T]he relevant language in the Act seems to be ambiguous because it is open to two plausible interpretations.  Certainly, the statute says 'any business concern.'  Still, it is unclear whether Congress meant that any business concern was eligible for a PPP loan regardless of SBA restrictions or whether the language modifies the preceding language allowing businesses with up to 500 employees to be eligible for the loans.").  So the language of the sentence on which Pharaohs relies actually supports the interpretation reached by Judge Wolford.

What is more, the interpretation urged by Pharaohs would lead to absurd results.  If "any" business concern means "all" business concerns as Pharaohs argues, then foreign corporations and illegal businesses—including drug conspiracies, as the Court observed during oral argument—would be eligible for guaranteed loans subject to forgiveness.  *See* 13 C.F.R. § 120.110(e) (excluding "[b]usinesses located in a foreign country"), (h) (excluding "[b]usinesses engaged in any illegal activity").[7]  Congress could not possibly have intended that absurd result.  And the Supreme Court has interpreted "any" to be limited where a broader interpretation would be so illogical.  *See Small v. United States*, 544 U.S. 385, 391 (2005) (finding that "convicted in any court" referred only to domestic convictions because "if read to include foreign convictions, the statute's language creates anomalies"); *Nixon v. Mo. Mun. League*, 541 U.S. 125, 133 (2004)

---

[7]  Indeed, at oral argument, Pharaohs's counsel reluctantly admitted that the logical conclusion of his argument would be that a heroin business might well be eligible for a PPP loan.

(finding that "any entity" was "a limited reference to any private entity" because a broader interpretation would lead to "strange and indeterminate results").

Finally, as the defendants observe, if Congress had intended to eliminate the requirements of the SBA regulation, it would have been redundant to list "non-profit organizations" as being eligible for a PPP loan.  Docket Item 15 at 16-17; *see also* 13 C.F.R. § 120.110(a) (excluding "[n]on-profit businesses" from SBA loans).  Instead, Congress's explicit inclusion of "non-profit organizations" suggests that it "was aware of the restrictions contained in § 120.110 but only expressly allowed PPP loans to be made to one of those forbidden categories:  non-profit businesses."  Docket Item 15 at 16-17.

For all those reasons, this Court finds "at step one of the *Chevron* analysis that the CARES Act is silent regarding the eligibility of [adult-entertainment businesses] to participate in the PPP.  Put differently, nothing in the CARES Act requires that [such businesses] be eligible for participation in the PPP—this detail was left by Congress for determination by the SBA."  *Diocese of Rochester*, 2020 WL 3071603, at *8.

The question then becomes whether the SBA's exclusion of businesses that provide entertainment of a "prurient sexual nature" is "arbitrary, capricious, or manifestly contrary to the [CARES Act]."  *See Chevron*, 467 U.S. at 844.  Put another way, the Court will uphold the agency's action unless "it is not supported by a reasoned explanation."  *Diocese of Rochester*, 2020 WL 3071603, at *8 (quoting *Catskill Mountains*, 846 F.3d at 521); *see also Kar Onn Lee v. Holder*, 701 F.3d 931, 936 (2d Cir. 2012) (explaining that at step two of the *Chevron* analysis, "[i]f the agency

interpretation is reasonable, then [the reviewing court] must defer to it'" (quoting *Adams v. Holder*, 692 F.3d 91, 95 (2d Cir. 2012))).[8]

Here, the SBA has offered a reasonable explanation for its decision to exclude adult-entertainment businesses from eligibility for PPP loans. As the defendants observe, "[t]he SBA's restrictions on certain categories of businesses receiving SBA funds reflect longstanding policies about the best uses of limited agency resources and taxpayer dollars." Docket Item 15 at 18 (citing 60 Fed. Reg. at 64,360; 51 Fed. Reg. at 37,589). "In establishing the PPP, and making a substantial, but nonetheless limited amount of taxpayer dollars available to subsidize small businesses during the COVID-19 pandemic," the defendants continue, "it is reasonable that Congress would choose to leave many of the SBA's restrictions on ineligible businesses intact, in order to prioritize the best use of taxpayer funds in light of preexisting government policies and the public interest." *Id.* This Court agrees. And, in fact, Pharaohs makes no argument as to why

---

[8] As Judge Wolford explained, "the inquiry into arbitrariness at *Chevron* step two is distinct from the inquiry into arbitrariness under § 706(2)(A) of the APA, which allows a court to set aside agency action that is 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.'" *Diocese of Rochester*, 2020 WL 3071603, at *8 (quoting 5 U.S.C. § 706(2)(A)). The latter inquiry is governed by the standard established in *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29 (1983), and involves "a much stricter and more exacting review of the agency's rationale and decision[-]making process than the Chevron Step Two standard." *Catskill Mountains*, 846 F.3d at 521. As the Second Circuit has explained, "*State Farm* is used to evaluate whether a rule is procedurally defective as a result of flaws in the agency's decision[-]making process" whereas "*Chevron*, by contrast, is generally used to evaluate whether the conclusion reached as a result of that process—an agency's interpretation of a statutory provision it administers—is reasonable." *Id.* Here, Pharaohs does not challenge the SBA's decision-making process; it challenges the conclusion that the SBA reached. Thus, the Court's inquiry is governed by step two of the *Chevron* analysis.

this explanation is not reasonable.  Instead, it relies on its contention that the CARES

Act is not ambiguous.  *See* Docket Item 3-6 at 4-5; Docket Item 16 at 2-5.

Thus, this Court finds that the SBA's application of 13 C.F.R. § 120.110 to the

PPP is not arbitrary, capricious, or manifestly contrary to the CARES Act.

### B.    Constitutional Claims

#### 1.    First Amendment

Pharaohs next argues that the SBA's excluding it from eligibility for a PPP loan

violates its constitutional rights because "nude dancing is a form of expression protected

by the First Amendment."  Docket Item 3-6 at 6 (citing *Schad v. Mount Ephraim*, 452

U.S. 61 (1981)).  More specifically, Pharaohs argues,"[b]y placing the obstacle of a

funding limitation in the path of Pharaohs and any other business which presents

entertainment involving nude dancing, the SBA 'has singled them out for unfavorable

treatment based solely on the content of their speech.'"  *Id.* (quoting *Camelot Banquet

Rooms*, 2020 WL 2088637, at *8).

The defendants counter that the PPP is a subsidy and that the government is not

required to subsidize Pharaohs's speech.  Docket Item 15 at 22-23.  Moreover, the

defendants argue, while the "'government may not place obstacles in the path of a

person's exercise' of constitutional freedoms, including 'freedom of speech, it need not

remove those not of its own creation.'"  *Id.* at 22 (quoting *Regan v. Taxation With

Representation of Washington*, 461 U.S. 540, 549-50 (1983)).

Pharaohs's First Amendment claim presents a closer question.  But for the

reasons that follow, this Court again agrees with the defendants and finds that

Pharaohs is unlikely to succeed on this claim as well.

13

"[I]t is well established that the government can make content-based distinctions when it subsidizes speech." *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 188-89 (2007) (citing *Regan,* 461 U.S. at 548-550).  Put another way, the government is not required to "grant a benefit . . . to a person who wishes to exercise a constitutional right." *Regan*, 461 U.S. at 545.  The government may not, however, "deny a benefit to a person because he exercises a constitutional right."  *Id.*; *see also Perry v. Sindermann,* 408 U.S. 593, 597 (1972) (holding that the government "may not deny a benefit to a person on a basis that infringes his constitutionally protected interests").

The line between "deny[ing] a benefit . . . to a person because he exercises a constitutional right" and choosing not to "grant a benefit . . . to a person who wishes to exercise a constitutional right" is far from sharp and may depend on one's perspective.  Giving loan benefits to all but a select few "grant[s] a benefit" to those who get it but "den[ies] that benefit" to those who do not.  Trying to focus that blurred line—at least at first glance—may seem like trying to see a distinction that is not there.

But the Supreme Court's analysis in *Regan* helps to clarify the issue.  There, the Court held that the government did not violate the First Amendment by denying lobbying firms 501(c)(3) tax-exempt status.  The Court contrasted its conclusion with its prior decisions in *Speiser v. Randall,* 357 U.S. 513 (1958), and *Perry,* 408 U.S. 593.  *See Regan*, 461 U.S. at 545.  *Speiser* struck down a rule requiring anyone who sought a property tax exemption to sign a declaration stating that he did not advocate the forcible overthrow of the United States government.  357 U.S. at 518.  In *Perry*, the Court held that a state junior college professor who alleged that the college refused to renew his contract because of his public criticism of the institution stated a viable First Amendment

14

claim.  408 U.S. at 593.  The facts in *Regan* did not "fit[ ] the *Speiser-Perry* model," the

Court said.  *Regan*, 461 U.S. at 545.  More specifically, the tax code provision at issue

in *Regan* did "not deny [the plaintiff] the right to receive deductible contributions to

support its *non-lobbying activity*, nor d[id] it deny [it] any *independent* benefit on account

of [the plaintiff's] intention to lobby."  *Id.* (emphasis added).  Put another way, "Congress

ha[d] merely refused to pay for the lobbying out of public moneys."  *Id.*

    Thus, in determining whether the government is improperly denying a benefit as

opposed to permissibly choosing which speech to subsidize, the question is whether the

"benefit" at issue is *funding* the speech.  In *Speiser*, the property tax exemption had

nothing to do with anarchist speech; the declaration requirement was merely a way to

try to quash the exercise of that type of speech.  Likewise, in *Perry*, the benefit of the

plaintiff's employment contract was unrelated to his desire to exercise his right to

criticize the college.  In *Regan*, by contrast, the government's money—in the form of a

tax exemption—would be used to *fund* lobbying.

    So the government could not, for example, condition a Pharaohs dancer's

unemployment benefits on her promise that she will not work at that type of

establishment in the future.  That clearly would deny a benefit to a person because of

the manner in which she exercised her First Amendment right.  The money distributed

through the PPP, by contrast, will *fund* the exercise of Pharaohs's First Amendment

right.

    Moreover, the D.C. Circuit recently affirmed a district court's finding "that PPP

loans are akin to the subsidy at issue in *Regan*, particularly in light of the PPP's

forgiveness provisions."  *Am. Ass'n of Political Consultants v. U.S. Small Bus. Admin.*,

2020 WL 3406524, at *1 (D.C. Cir. May 26, 2020) (finding that the SBA's exclusion of lobbying firms from the PPP did not violate the First Amendment).  This Court agrees and finds that Pharaohs is not likely to succeed on its argument that PPP loans are benefits.  Stated differently, it is more likely that the government will succeed on its argument the PPP loans are subsidies, and as a result, that the SBA may decide what types of speech it is willing to subsidize.

Even if PPP loans are subsidies, however, that does not end the inquiry.  The government may not make funding choices that are "the product of invidious viewpoint discrimination" or "ai[med] at the suppression of dangerous ideas."  *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998) (second quoting *Regan*, 461 U.S. at 550).  For example, if the SBA had chosen to exclude *only* adult-entertainment businesses from the PPP, Pharaohs would have a stronger argument that Congress was "invidious[ly]" seeking to "suppress[ ]" its type of speech.  But that is not the case here.

13 C.F.R. § 120.110 excludes many types of businesses from eligibility for PPP loans, including "[b]usinesses deriving more than one-third of gross annual revenue from legal gambling activities; . . . [p]rivate clubs and businesses which limit the number of memberships for reasons other than capacity; . . . [b]usinesses principally engaged in teaching, instructing, counseling or indoctrinating religion or religious beliefs, whether in a religious or secular setting; . . . [and b]usinesses primarily engaged in political or lobbying activities."  Thus, Pharaohs is not—as it claims—being "singled . . . out for unfavorable treatment based solely on the content of [its] speech.'"  Docket Item 3-6 at 6.

Pharaohs relies on *Camelot Banquet Rooms*, in which the court found that the SBA's exclusion of adult-entertainment businesses from the PPP violated the First Amendment.  *See* 2020 WL 2088637, at *8-*10.  This Court respectfully disagrees with that court's analysis.

As an initial matter, the court in *Camelot Banquet Rooms* stated that the government "has chosen to remove the COVID-19 obstacle from the path of nearly every other small business in the United States."  2020 WL 2088637, at *8.  But as noted above, that simply is not so.  In fact, more than a dozen types of businesses are excluded under § 120.110.

Moreover, the *Camelot Banquet Rooms* court distinguished *Regan* on grounds that are undermined by Second Circuit precedent.  More specifically, the *Camelot Banquet Rooms* court explained that "here, the SBA has targeted a much narrower form of expressive activity" than in *Regan.*  2020 WL 2088637, at *10.  The court continued: "Lobbying, of course, embraces a wide variety of viewpoints.  Although it is perhaps inaccurate to say that nude dancing is a viewpoint, it is a form of expression that, unlike lobbying, inherently conveys a specific message."  *Id.*  But the Second Circuit has held that lascivious material does not convey a specific message.  See *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 281 (2d Cir. 1997).  There, the court upheld a law prohibiting the rental or sale on military bases of materials "the dominant theme of which depicts or describes nudity, including sexual or excretory activities or organs, in a lascivious way."  *Id.* (quoting 10 U.S.C. § 2489a(d)).  The court rejected the appellees' argument that the law "target[ed] a *viewpoint* portraying 'women as sexual beings or as the focus of sexual desire,' as well as a *viewpoint* of 'lasciviousness.'"  *Id.* (emphasis in

original).  Thus, the court found that the law at issue "distinguishe[d] between permissible and impermissible speech on the basis of content, but it d[id] not rise to the level of viewpoint discrimination."  *Id.*

It follows from *General Media* that the SBA's decision to exclude adult-entertainment businesses from the PPP is content—not viewpoint—based.  And as explained above, "the government can make content-based distinctions when it subsidizes speech."  *Davenport*, 551 U.S. at 188-89; *see also Am. Ass'n of Political Consultants*, 2020 WL 3406524, at *1 ("Content-based funding decisions that are viewpoint neutral and reasonable have been upheld.").

For all those reasons, this Court finds that Pharaohs is unlikely to succeed on its First Amendment claim.

### C.    Equal Protection

Pharaohs also argues that its exclusion from the PPP violates the equal protection guarantee of the Due Process Clause of the Fifth Amendment.  Because Pharaohs has neither "shown that [its] First Amendment rights have been infringed nor alleged that [§ 120.110(p)] employs a suspect classification . . . , rational basis review applies."  *Am. Ass'n of Political Consultants*, 2020 WL 3406524, at *2; *see also Regan*, 461 U.S. at 547 ("Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose.  Statutes are subjected to a higher level of scrutiny if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as race.").

The question is thus whether the government has identified a legitimate government purpose for treating these types of businesses differently.  As explained

above, this Court finds that it is reasonable for the government "to prioritize the best use

of taxpayer funds in light of preexisting government policies and the public interest"—

including declining to spend taxpayer dollars to subsidize entertainment of a "prurient

sexual nature." *See* Docket Item 15 at 18; *cf. Am. Ass'n of Political Consultants v.*

*United States Small Bus. Admin.*, 2020 WL 1935525, at *5 (D.D.C. Apr. 21, 2020)

(finding that it was reasonable "for the government to decide that the public benefits of

subsidizing political speech by consultants and lobbyists would not be worth the

commitment of its finite resources"), *aff'd,* 2020 WL 3406524 (D.C. Cir. May 26, 2020).

Thus, this Court finds that Pharoahs is not likely to show that the SBA's exclusion of

adult-entertainment businesses from the PPP violates Pharoahs's right to equal

protection.[9]

## II.   THE DEFENDANTS' MOTION TO DISMISS

The defendants argue that Pharoahs's constitutional claims should be dismissed

based on lack of standing.  More specifically, the defendants contend that even if

Pharoahs is successful on its constitutional claims, it will have no remedy because it still

is ineligible for a PPP loan based on Anthony Gerace's indictment.

Under 13 C.F.R. § 120.110(n), "[b]usinesses with an Associate who is

incarcerated, on probation, on parole, or has been indicted for a felony or a crime of

---

[9]  Although Pharoahs's complaint states that the SBA regulation is impermissibly vague, *see* Docket Item 1 at ¶ 77(d), it does not make this argument in its briefing.  *See* Docket Item 3-6; Docket Item 16.  Thus, Pharoahs has abandoned this argument with respect to its motion for a preliminary injunction.  *See Deats v. Monroe Cty.*, 2014 WL 6769756, at *4 (W.D.N.Y. Dec. 1, 2014) ("The lack of any form of a developed argument on this point would justify a determination by this Court to not address this claim, and deem it waived." (citing *State Street Bank and Trust Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 172 (2d Cir. 2004)).

moral turpitude" are ineligible for PPP loans.  The definition of "Associate" includes any "officer[,] director, owner of more than 20 percent of the equity, or key employee of the [business]."  *Id.* § 109.20(2)(i).  Here, the parties do not dispute that Anthony Gerace, one of Pharaohs's employees, is under indictment.  *See* Docket Item 16 at 6.  But the parties indeed disagree about whether Gerace is in fact a "key employee."  *Compare* Docket Item 15 at 20 (describing Gerace as "a key member of [Pharaohs's] managerial staff"), *with* Docket Item 16 at 6 (describing Gerace as "a cook working alone in the kitchen" who "supervises no one").  That is a classic factual dispute, inappropriate for resolution on a motion to dismiss.  *See Bernstein v. Seeman*, 601 F. Supp.2d 555, 556 (S.D.N.Y. 2009) (explaining that "a motion to dismiss is not the proper stage at which to resolve factual disputes").  The Court therefore denies the defendants' motion.

## CONCLUSION

For the reasons explained above, this Court DENIES the plaintiff's motion for a preliminary injunction, Docket Item 3, as well as the defendants' motion to dismiss, Docket Item 13.

SO ORDERED.

Dated:   June 26, 2020
        Buffalo, New York


        */s/ Lawrence J. Vilardo*
        LAWRENCE J. VILARDO
        UNITED STATES DISTRICT JUDGE