UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

PHARAOHS GC, INC.

                    Plaintiff,                    20-CV-665

     v.

UNITED STATES SMALL BUSINESS
ADMINISTRATION,

ISABELLA CASILLAS GUZMAN, in her Official Capacity as
Administrator of the Small Business Administration,

UNITED STATES OF AMERICA,

JANET YELLEN, in her Official Capacity as
United States Secretary of Treasury,

                    Defendants.


**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dated:  July 21, 2022


                    TRINI E. ROSS
                    United States Attorney

                    S/MICHAEL S. CERRONE
                    Assistant U.S. Attorney
                    U.S. Attorney's Office
                    Western District of New York
                    138 Delaware Avenue
                    Buffalo, New York 14202
                    716-843-5851
                    michael.cerrone@usdoj.gov

## INTRODUCTION

This memorandum of law is submitted on behalf of defendants (collectively, the "Government") in further support of their motion for summary judgment seeking the dismissal of Plaintiff's complaint.

## ARGUMENT

## POINT I

## THIS ACTION HAS BEEN RENDERED MOOT BY VIRTUE OF PLAINTIFF'S OWNER'S FELONY INDICTMENT

In response to the Government's mootness argument, Plaintiff argues that the issue is not properly before the Court because the Government failed to raise mootness as an affirmative defense in its answer to the complaint. Dkt. # 43, p. 8. However, it is well-settled that mootness goes to the subject matter jurisdiction of the Court. New York City Employees' Retirement Sys. v. Dole Food Co., 969 F.2d 1430, 1433 (2d Cir.1992). Moreover, a defense as to the subject matter jurisdiction of the court, including one for mootness, cannot be waived. Fox v. Bd. of Trustees of State Univ. of New York, 42 F.3d 135, 140 (2d Cir. 1994) ("Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings."). Accordingly, the Government's mootness defense is properly before the Court.[1] Fox, 42 F.3d at 140.

Plaintiff next argues that the text of the Declaratory Judgment Act somehow precludes the Government's mootness argument. Dkt. # 43, pp. 8-9. Specifically, Plaintiff asserts that, under the Declaratory Judgment Act, this case must be decided based upon the "facts alleged" in Plaintiff's complaint and the "controversy giving rise to the [present] proceeding," i.e., the

---

[1] It should be noted that the facts underlying the Government's mootness defense did not arise until after the Government answered Plaintiff's complaint. The Government answered Plaintiff's complaint on August 20, 2020 (Dkt. # 24) and Plaintiff's owner, Peter Gerace, was not indicted until several months later on February 25, 2021. Dkt. # 36-2.

prurience restriction under § 120.110(p), rather than the subsequent federal indictment of Plaintiff's owner. Dkt. # 43, p. 9. However, it is well-settled that the Declaratory Judgment Act incorporates "the case or controversy limitation on federal jurisdiction found in Article III of the Constitution." Niagara Mohawk Power Corp. v. Tonawanda Band of Seneca Indians, 94 F.3d 747, 752 (2d Cir. 1996). Accordingly, the federal courts regularly dismiss federal actions seeking declaratory relief on the grounds of mootness even where the facts underlying the mootness defense are distinct from the facts underlying the dispute. See e.g., Fox, 42 F.3d at 140 ("This court has consistently held that students' declaratory and injunctive claims against the universities that they attend are mooted by the graduation of the students, because after their graduation and absent a claim for damages, it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.") (citations and internal quotation marks omitted). Similarly here, because Plaintiff is ineligible for a PPP loan due to its owner's federal indictment, the controversy concerning the prurience restriction has been rendered moot.[2]

---

[2] Plaintiff further argues that the Government's mootness defense is meritless because the SBA has yet to deny Plaintiff's application for a PPP loan on the basis of Plaintiff's owner's federal indictment. Dkt. # 43, p. 8. However, as Plaintiff's accountant acknowledges, Dkt. # 43-1, ¶ 12, Plaintiff did not receive a PPP loan because it is barred from receiving one as a business involved in "[p]resent[ing] live performances of a prurient sexual nature." 13 C.F.R. § 120.110(p). Because Plaintiff was precluded from receiving a PPP loan under § 120.110(p), there was no reason to consider a second ground of ineligibility when Plaintiff's owner was indicted several months later. In the unlikely event that this Court determines that Plaintiff's claims with respect to § 120.110(p) have merit, then the second ground of Plaintiff's ineligibility for PPP loan may be considered and would similarly result in the denial of its application. This case presents a perfect example of why the mootness doctrine exists and why this case should be dismissed on that basis. Janakievski v. Exec. Dir., Rochester Psychiatric Ctr., 955 F.3d 314, 319 (2d Cir. 2020) ("If, as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness.").

## POINT II

### THE SBA RESTRICTION DOES NOT VIOLATE THE FIRST AMENDMENT

In its lone substantive argument, Plaintiff argues that it has a constitutionally protected property interest in the receipt of a PPP loan and that the existence of such an interest places this case in line with Speiser v. Randall, 357 U.S. 513 (1958) and Perry v. Sindermann, 408 U.S. 593 (1972), where the Supreme Court held that the government may not deny a benefit to a person because he exercises a constitutional right, rather than with Regan v. Tax'n With Representation of Washington, 461 U.S. 540 (1983), where the Court held that the government has no obligation to subsidize speech.  Plaintiff's argument is meritless.

"Speiser struck down a rule requiring anyone who sought a property tax exemption to sign a declaration stating that he did not advocate the forcible overthrow of the United States government."  Pharaohs GC, Inc. v. United States Small Bus. Admin., No. 20-CV-665, 2020 WL 3489404, at *6 (W.D.N.Y. June 26, 2020), aff'd, 990 F.3d 217 (2d Cir. 2021) (citing Speiser, 357 U.S. at 518).  "In Perry, the Court held that a state junior college professor who alleged that the college refused to renew his contract because of his public criticism of the institution stated a viable First Amendment claim."  Pharaohs GC, 2020 WL 3489404, at *6 (citing Perry, 408 U.S. at 593). Regan, however, did not "fit[ ] the Speiser-Perry model."  Regan, 461 U.S. at 545. In Regan, "the Court held that the government did not violate the First Amendment by denying lobbying firms 501(c)(3) tax-exempt status."  Pharaohs GC, 2020 WL 3489404, at *6.

The relevant distinction between Speiser and Perry on the one hand and Regan on the other is between conditions that merely "define the limits of [a] Government spending program" by "specify[ing] the activities the [Government] wants [or does not want] to subsidize"—which are permissible under Regan—and conditions that "leverage[ ] federal funding to regulate [recipients']

speech outside the scope of the program"—which are not permissible under <u>Speiser</u> and <u>Perry</u>. <u>Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.</u>, 570 U.S. 205, 214-217 (2013); <u>Rust v. Sullivan</u>, 500 U.S. 173, 194, 197 (1991); <u>see also</u> <u>Pharaohs GC</u>, 2020 WL 3489404, at *7 ("in determining whether the government is improperly denying a benefit as opposed to permissibly choosing which speech to subsidize, the question is whether the 'benefit' at issue is funding the speech.")

To illustrate the difference, both <u>Alliance for Open Society</u>, 570 U.S. at 215, and <u>Rust</u>, 500 U.S. at 197-98, pointed to <u>Regan</u>. There the IRS had denied tax-exempt status to the plaintiff, a non-profit organization, because its intended use of tax-deductible contributions to support its lobbying activities was prohibited by section 501(c)(3) of the Internal Revenue Code. <u>Regan</u>, 461 U.S. at 542. The plaintiff challenged this prohibition as an unconstitutional condition imposed on its receipt of tax-deductible contributions from donors. <u>Id.</u> at 545. The Court had no difficulty rejecting this claim. <u>See id.</u> at 545-46. Treating the tax-deductibility of contributions as "similar to cash grants" to the organization, the Court concluded that the plaintiff could continue to receive tax-deductible contributions for its non-lobbying activities by forming an affiliated tax-exempt entity, under section 501(c)(4) of the Code, that would be permitted to conduct lobbying activities using sources of funds other than tax-deductible (that is, federally subsidized) contributions. <u>Id.</u> at 544-46. Thus, the plaintiff was not prohibited from using non-subsidized contributions to engage in lobbying, nor denied other government benefits because of its intent to lobby; "Congress ha[d] merely refused to pay for the lobbying out of public monies." <u>Id.</u> at 545.

In reaching this conclusion, <u>Regan</u> distinguished the precedent on which Plaintiff relies, <u>Speiser</u> and <u>Perry</u>. <u>Regan</u> explained that a "mere[ ] refus[al]" to pay for the expression of a private party "out of public monies" does not "fit[ ] the <u>Speiser-Perry</u>] model." 461 U.S. at 545. The

government does "not infringe[ ] any First Amendment rights" within the meaning of <u>Speiser</u> or <u>Perry</u> when it "simply [chooses] not to pay for" a private party's speech. <u>Id.</u> at 546.

That is the situation here. Section 120.110(p) does not prohibit businesses of a prurient sexual nature from expressing themselves using their own funds, or deny them benefits "independent of [SBA loans] on account of [their] intention" to engage in expressive activities. SBA "merely refuse[s] to pay for [these activities] out of [SBA] monies." <u>Regan</u>, 461 U.S. at 545. That decision is perfectly constitutional. <u>See</u> <u>Pharaohs GC, Inc. v. United States Small Bus. Admin.</u>, 990 F.3d 217, 229 (2d Cir. 2021) ("The prurience restriction at issue here excludes certain types of businesses from eligibility for PPP loans—it does not directly regulate speech. The prurience restriction is thus part of a selective subsidy program.").

That conclusion is reinforced by <u>United States v. Am. Library Ass'n</u>, 539 U.S. 194 (2003) (plurality). The plaintiffs there challenged a federal law that required public libraries receiving federal financial assistance for the purpose of providing Internet access to install filtering software designed to block access to online pornography. 539 U.S. at 198-99. The plurality rejected the contention that Congress had imposed an unconstitutional condition on the libraries' receipt of this federal assistance. <u>Id.</u> at 210-12. Congress had not "penalize[d]" libraries that chose not to install filters by denying them other, unrelated federal benefits, and the libraries remained free to offer unfiltered Internet access to their patrons using their own funds, without the benefit of federal aid. <u>Id.</u> at 212. Congress had simply decided not to subsidize unfiltered Internet access.

Likewise, under section 120.110(p), no small business is denied benefits outside the parameters of SBA lending simply because it engages in prurient sexual activities. Businesses that wish to conduct these activities are free to do so using their own funds rather than Government-subsidized loans. What they cannot do is have it both ways, as Plaintiff insists. They are not

entitled to federal subsidies *and* to use those subsidies to finance activities, even expressive activities, that the Government does not wish to fund, any more than public libraries were entitled both to receive federal subsidies *and* to use those subsidies for unfiltered Internet access that the Government did not wish to pay for.

Plaintiff argues, relying upon the Second Circuit's decision in Kapps v. Wing, 404 F.3d 105 (2d Cir. 2005), that it has a constitutionally protected property interest in the receipt of a PPP loan and that such interest, which was not previously considered by this Court or the Second Circuit in their earlier decisions, transforms the PPP "subsidy" into a "benefit which the Plaintiff has been improperly denied from receiving on a basis that infringes the Plaintiff's constitutionally protected interests." Dkt. # 43, p. 2.   In Kapps, the Second Circuit held that applicants for a home heating entitlement, known as HEAP, have a constitutionally protected property interest and "must be afforded procedural protections under the Due Process Clause to demonstrate his or her eligibility."  404 F.3d at  117.  Relying upon Kapps, Plaintiff argues that PPP loans are an entitlement or grant like the HEAP benefits in Kapps because of the generous loan forgiveness provisions of the CARES Act, and that their constitutionally protected property interest in PPP loan funds distinguishes this case from Regan. Dkt. # 43, pp. 2-4.  Plaintiff's argument is meritless for several reasons.

First, Plaintiff does not cite to any caselaw which suggests that the existence of a constitutionally protected property interest plays any role in the analysis of whether a First Amendment claim fits within Speiser-Perry or Regan.   Certainly nothing in Alliance for Open Society, the Supreme Court's most recent explication of the distinction, suggests that it turns on whether a government benefit rises to the level of a property interest.  See 570 U.S. at 213-17.  The notion of a constitutionally protected property interest is, of course, a due process concept.  Bryant

v. N.Y. State Educ. Dep't, 692 F.3d 202, 218 (2d Cir.2012) ("A procedural due process claim is composed of two elements: (1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process.").  Notably, Plaintiff has not alleged a procedural due process claim nor has it asserted exactly what process it was due or how the Government failed to provide such process.

Second, assuming that a PPP loan is considered a "grant" as Plaintiff contends, that does not remove this case from the reach of Regan as the Court therein considered the tax-deductibility of contributions as "similar to cash grants" to the organization.  Id. at 545-546.  Likewise, in American Library Association, Congress had created an entitlement for public libraries to receive discounted Internet access, 539 U.S. at 199, yet it was held that the filtering requirement did not place an unconstitutional condition on libraries' receipt of those discounts, id. at 210-12.

Third, Plaintiff's claim that it has a property interest in PPP loan funds is foreclosed by the Second Circuit's decision in Springfield Hosp., Inc. v. Guzman, 28 F.4th 403 (2d Cir. 2022). Although Springfield Hospital was decided in the context of whether PPP loan qualifies as a "grant" under § 525(a) of Bankruptcy Code, the Court's careful analysis of the CARES Act shows that PPP loans are not an entitlement program like the home heating benefits program in Kapps. As the Second Circuit reasoned in Springfield Hospital, the plain language of the CARES Act shows that the PPP is a loan program and not a grant or entitlement program.  Id. at 423 ("the CARES Act uses the word 'loan' approximately 75 times when describing the PPP").  Also, while the CARES Act's loan forgivability provisions are undoubtedly generous, they are "neither automatic nor guaranteed."  Id. at 424.  Thus, the PPP loan program does not bear the hallmarks of an entitlement program like the home heating benefit program in Kapps.  Moreover, the CARES Act's maintenance of the "sound value" requirement and the exclusion of bankrupt debtors from

receiving PPP loans shows the existence of at least minimal underwriting criteria – i.e. discretion – to consider in granting PPP loans. Id. at 424-425. The existence of this discretion defeats Plaintiff's claim that it has constitutionally protected property interest as an applicant for a PPP loan. Kapps, 404 F.3d at 115 (2d Cir. 2005) ("whether a benefit invests the applicant with a claim of entitlement or merely a unilateral expectation is determined by the amount of discretion the disbursing agency retains.") (citations and internal quotation marks omitted).

Furthermore, Plaintiff fails to recognize the limitation of the ruling in Kapps.  Kapps did not hold that applicants for HEAP benefits have a property interest in the receipt of the benefits but merely a "limited property interest entitling him, at least, to process sufficient to permit a demonstration of eligibility." Kapps, 404 F.3d 116.  Therefore, even in the unlikely event that the PPP is considered a grant under Kapps, Plaintiff would not have a property interest in the receipt of the PPP funds but merely a "limited property interest" to determine its eligibility for a PPP loan. This brings up the central fatal flaw in Plaintiff's argument: it is not clear how Plaintiff could have a constitutionally protected property interest in the receipt of PPP loan funds when it is plainly -- by its own admission -- ineligible for such a loan under § 120.110(p).  Indeed, unlike Kapps where the plaintiffs alleged violations of due process which denied them HEAP benefits to which they were entitled, the very basis of Plaintiff's suit is not to prove that it is eligible for a PPP loan but rather to remove an obstacle to eligibility by challenging the constitutionality of § 120.110(p). Dkt. # 1, ¶ 1 (Plaintiff's suit challenges "exclusionary eligibility criteria" for a PPP loan); ¶ 43 ("Plaintiff is fully qualified [to receive a PPP loan] – but for [the SBA's regulations].").  Given that Plaintiff is clearly ineligible for a PPP loan, it lacks a "legitimate claim of entitlement" to such a loan and, thus, Plaintiff does not have a constitutionally protected property interest in the receipt of PPP funds.  Board of Regents of State Colleges v. Roth, 408 U.S. 564, 577 (1972).

Fourth, Plaintiff does not cite a single precedent from the Supreme Court or this Circuit in which the Government was required to fund or subsidize speech on particular topics that the Government did not wish to promote.  Yet that is exactly what Plaintiff asks of the Court here. Plaintiff phrases its claim as one where a PPP loan is a "benefit which the Plaintiff has been improperly denied from receiving on a basis that infringes the Plaintiff's constitutionally protected interests."  Dkt. # 43, p. 2.  In other words, Plaintiff is asking this Court to compel the SBA to guarantee a heavily subsidized PPP loan so that Plaintiff may spend the proceeds on activities that the Government has refused to subsidize for at least a quarter century. No argument advanced by Plaintiff supports that result.  Ysursa v. Pocatello Educ. Ass'n, 555 U.S. 353, 358 (2009) (the First Amendment does not require the government to "assist others in funding the expression of particular ideas."); Davenport v. Washington Educ. Ass'n, 551 U.S. 177, 190 (2007) ("[T]he First Amendment does not require the government to enhance a person's ability to speak.").

Because "a legislature's decision not to subsidize the exercise" of First Amendment speech "does not infringe the right," Regan, 461 U.S. at 549-50, the "government can make content-based distinctions when it subsidizes speech," Davenport, 551 U.S. at 188-89, and its decision "is not subject to strict scrutiny," but rather rational-basis review, Regan, 461 U.S. at 549-50; Ysursa, 555 U.S. at 359.  Under rational-basis review, the exclusion of adult-oriented business from PPP loans was rational in light of the negative "secondary effects" of sex-related businesses and the SBA's interest in prioritizing its finite resources.[3]  Pharaohs GC, 990 F.3d at 230; Pharaohs GC, 2020 WL 3489404, at *8.

---

[3] As Plaintiff's sole substantive argument in opposition to the Government's summary judgment motion is based on the First Amendment, all of Plaintiff's remaining claims should be dismissed for the reasons stated in the Government's principal memorandum.

9

## **CONCLUSION**

For the reasons above, the Government's motion for summary judgment should be granted.

DATED:   Buffalo, New York, July 21, 2022

TRINI E. ROSS
United States Attorney


BY:   s/MICHAEL S. CERRONE
Assistant U.S. Attorney
U.S. Attorney's Office
Western District of New York
138 Delaware Avenue
Buffalo, New York 14202
716-843-5851
michael.cerrrone@usdoj.gov