**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**PHARAOHS GC, INC.,**

               **Plaintiff,**

       **v.**                                         **20-CV-665 (LJV) (HKS)**

**UNITED STATES SMALL BUSINESS**
**ADMINISTRATION, JOVITA**
**CARRANZA, in her Official Capacity as**
**Administrator of the Small Business**
**Administration, UNITED STATES OF**
**AMERICA, and STEVE MNUCHIN,**
**in his Official Capacity as United**
**States Secretary of Treasury,**

               **Defendants.**

_____

## <u>REPORT, RECOMMENDATION AND ORDER</u>

The Honorable Lawrence J. Vilardo referred this case to the undersigned for all

pretrial matters and to hear and report upon dispositive motions pursuant to 28 U.S.C.

§§ 636(b)(1)(A), (B) and (C). Dkt. 25.

Plaintiff Pharaohs GC, Inc., filed a complaint against Defendants seeking

injunctive, declaratory, and monetary relief (Dkt. 1). Plaintiff alleges that the Small

Business Administration's ("SBA") application of 13 C.F.R. § 120.110(p) (the "prurience

restriction") to the Paycheck Protection Program ("PPP") is an unconstitutional condition

on its freedom of speech under the First Amendment and violates its equal protection

rights under the Fifth Amendment. Dkt. 1, at ¶¶ 54–63, 64–79. Plaintiff also challenges

the prurience restriction under the Administrative Procedure Act ("APA"). _Id._ at ¶¶ 80–

85. Defendants now move for summary judgment (Dkt. 36). For the following reasons, the Court recommends that Defendants' motion be granted in full.

## BACKGROUND

## I.   THE CARES ACT

On March 27, 2020, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which created the PPP, authorizing the SBA to guarantee loans to small businesses affected by the pandemic. Pub. L. No. 116-136, § 1102, 134 Stat. 281, 286–94 (2020) (codified at 15 U.S.C. § 636(a)). PPP loans are forgiven to the extent the borrower uses the funds for payroll costs (including group health insurance and other benefits), mortgage interest, rent, or utilities. 15 U.S.C. §§ 636(a)(36)(B), (F), 9005(b).

Congress placed the Program under section 7(a) of the Small Business Act, 15 U.S.C. § 636(a). The 7(a) loan program is the SBA's primary program for providing financial assistance to small businesses. Congress authorized the SBA Administrator to guarantee PPP loans "under the same terms, conditions, and processes" as 7(a) loans. *Id.* § 636(a)(36)(B). Pursuant to the CARES Act, 15 U.S.C. § 9012, the SBA Administrator exercised emergency rulemaking authority to promulgate several interim final rules to "carry out" the Program. As those rules explain, small businesses seeking PPP loans must apply through an approved lender. 85 Fed. Reg. at 20,812. PPP loans are distributed on a "first come, first served" basis until the full amount of the congressionally authorized loan commitment has been met. *Id.* at 20,813.

The rules governing eligibility for PPP loans incorporated longstanding restrictions on eligibility for 7(a) loans. A section of the first interim final rule entitled "How do I determine if I am ineligible?" provides that the types of businesses categorically ineligible for 7(a) loans also are ineligible for PPP loans. *Id.* at 20,812 (incorporating 13 C.F.R. § 120.110, restrictions on eligibility for certain "types of businesses"). The rule's sole exception to the adoption of 7(a)'s eligibility restrictions is for nonprofit organizations, which Congress expressly made eligible for PPP loans. *See id.*; 15 U.S.C. § 636(a)(36)(D)(i) (making nonprofit organizations eligible for PPP loans). Thus, the "types of businesses" that are not eligible for PPP loans include foreign businesses, "[p]yramid sale distribution plans," "[s]peculative businesses (such as oil wildcatting)," businesses with an associate indicted

2

for a felony or crime of moral turpitude, "[b]usinesses primarily engaged in political or lobbying activities," and, as relevant here, businesses that "[p]resent live performances of a prurient sexual nature"—i.e., the "prurience restriction." 13 C.F.R. § 120.110.

*Pharaohs GC, Inc. v. United States Small Bus. Admin.*, 990 F.3d 217, 224 (2d Cir. 2021) (footnote omitted).

## II.  <u>FACTUAL AND PROCEDURAL HISTORY</u>

Pharaohs is an adult-entertainment business that "present[s] nude or semi-nude erotic dance entertainment." Dkt. 1, at ¶ 32. Peter Gerace is Pharaohs' sole owner. Dkt. 36-4, at 1; *see* Dkt. 3-4, at 1. On May 21, 2020, Pharaohs applied for a PPP loan through Live Oak Bank, with the help of Scott Meacham. Dkt. 43-4, at ¶ 3. The bank informed Meacham that "it would be necessary for the bank to reject Pharaohs' loan application because it was involved in a business of a 'prurient sexual nature.'" *Id.* at ¶ 4. Meacham "asked the underwriter to not reject the application, to put it on 'hold' while Pharaohs reviewed its options and possible remedies" and "was advised that Live Oak Bank would comply with [his] request, but was notified that this should be done expeditiously as the funding for the PPP was almost exhausted." *Id.* at ¶ 5.

Consequently, Pharaohs has been "unable to proceed with the PPP loan." Dkt. 43-3, at ¶ 8. And without the PPP loan, Pharaohs has been "unable to make any wage payments, payments to vendors, or payments on the business's mortgage" and "anticipate[s] that [its] business will soon fail." *Id.* Pharaohs alleges that the prurience restriction is inconsistent with the CARES Act and violates its constitutional rights and seeks injunctive, declaratory, and monetary relief. Dkt. 1.

On February 25, 2021, Gerace was indicted on charges of (i) conspiracy to defraud the United States in violation of 18 U.S.C. § 371, (ii) paying a bribe to a public official in violation of 18 U.S.C. § 201(b)(1)(A) and 201(b)(1)(C), and (iii) conspiracy to commit sex trafficking in violation of 18 U.S.C. § 1594(c). Dkt. 36-4, at ¶ 3; *see* Dkt. 36-2. And on June 8, 2023, Gerace was indicted on four counts of wire fraud in violation of 18 U.S.C. § 1343. Dkt. 46, at ¶¶ 5–6; *see* Dkt. 46-1. Each of these offenses is a felony. Dkt. 36-4, at 4; Dkt. 46, at ¶ 8.

Plaintiff moved for a preliminary injunction (Dkt. 3) and Defendants moved to dismiss the complaint (Dkt. 13). The court denied both motions. *See* Dkt. 18; *Pharaohs GC, Inc. v. United States Small Bus. Admin.*, No. 20-CV-665, 2020 WL 3489404 (W.D.N.Y. June 26, 2020). Plaintiff appealed the denial of its motion for preliminary injunction, and the Second Circuit affirmed. *See Pharaohs GC*, 990 F.3d 217 (2d Cir. 2021). Defendants now move for summary judgment (Dkt. 36). Plaintiff opposed (Dkt. 43) and Defendants replied (Dkt. 44).

## DISCUSSION

## I.   MOOTNESS

Defendants argue that Gerace's felony indictments have mooted Plaintiff's claims. Dkt. 36-3, at 20–22. To satisfy the Constitution's case-or-controversy requirement, "a party must, at each stage of the litigation, have an actual injury which is likely to be redressed by a favorable judicial decision." *Janakievski v. Exec. Dir., Rochester Psychiatric Ctr.*, 955 F.3d 314, 319 (2d Cir. 2020). While "standing doctrine focuses 'on whether the party invoking jurisdiction had the requisite stake in the outcome when the suit was filed,' 'mootness doctrine ensures that [a] litigant's interest in

the outcome continues to exist throughout the life of the lawsuit." *Connecticut Citizens Def. League, Inc. v. Lamont*, 6 F.4th 439, 444 (2d Cir. 2021) (citations omitted). A case becomes moot "when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (internal quotation marks omitted) (quoting *Knox v. Serv. Emps. Int'l Union, Loc. 1000*, 567 U.S. 298, 307 (2012)). If, "as a result of changed circumstances, a case that presented an actual redressable injury at the time it was filed ceases to involve such an injury, it ceases to fall within a federal court's Article III subject matter jurisdiction and must be dismissed for mootness." *Janakievski*, 955 F.3d at 319. Accordingly, "a case that is 'live' at the outset may become moot 'when it becomes impossible for the courts, through the exercise of their remedial powers, to do anything to redress the injury.'" *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (citation omitted). Defendants "bear[] the burden of proving that a change of circumstances during the course of litigation has rendered a case moot." *Shotkin v. United States*, No. 3:19-CV-01506 (JCH), 2021 WL 5770039, at *3 (D. Conn. Dec. 6, 2021) (citing *Mhany Management, Inc. v. City of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016)).

Plaintiff argues that the issue of mootness is not properly before the Court because Defendants failed to assert such a defense in their answer. Dkt. 43, at 8. When a case becomes moot, the court "lacks subject matter jurisdiction over the action." *New York City Employees' Retirement Sys. v. Dole Food Co.,* 969 F.2d 1430, 1433 (2d Cir. 1992). Defects in subject matter jurisdiction "cannot be waived and may be raised at any time during the proceedings." *Fox v. Bd. of Trustees of State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994). Accordingly, "mootness is not a defense that could be

waived by the Defendants, but rather is a condition that deprives the court of subject matter jurisdiction." *Id.*

A litigant "may not use the declaratory judgment statute to secure judicial relief of moot questions." *Christopher P. by Norma P. v. Marcus*, 915 F.2d 794, 802 (2d Cir. 1990); *accord Caswell v. Green*, No. 1:10-CV-0166 MAT, 2013 WL 4015013, at *4 (W.D.N.Y. Aug. 6, 2013) ("Federal district courts have no jurisdiction to render declaratory judgments when the underlying questions are moot or otherwise nonjusticiable."); *Shariff v. Coombe*, 655 F. Supp. 2d 274, 297 (S.D.N.Y. 2009) ("The Declaratory Judgment Act cannot resurrect substantive claims that are defeated by . . . mootness[.]"). When attempting "to define the problem of mootness in the context of a declaratory judgment action, the Supreme Court explained that '[b]asically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of *sufficient immediacy and reality* to warrant the issuance of a declaratory judgment.'" *Penguin Books USA Inc. v. Walsh*, 929 F.2d 69, 72 (2d Cir. 1991) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).[1] The dispute "must exist at all stages of review." *Penguin Books USA Inc.*, 929 F.2d at 72.

---

[1] Plaintiff's argument that the Court may only consider the pleadings when determining the issue of mootness is meritless. *See* Dkt. 43, at 8–9. Courts "may consider or refer to evidence outside the pleadings in resolving the jurisdictional issue of mootness." *Riverkeeper, Inc. v. Mirant Lovett, LLC*, 675 F. Supp. 2d 337, 347 (S.D.N.Y. 2009); *see also Etuk v. Slattery*, 936 F.2d 1433, 1441 (2d Cir. 1991) ("In assessing whether a case is moot, [the court] must examine *all the facts and circumstances*.") (emphasis added). In any event, the attorney's declaration (Dkt. 36-1) and supporting exhibit (Dkt 36-2) submitted by Defendants are properly before the Court on this summary judgment motion. *See* Fed. R. Civ. P. 56(c); *Otto v. Saia*, No. 04-CV-494, 2007 WL 189854, at *5 (W.D.N.Y. Jan. 23, 2007) ("An attorney's affidavit can be used to introduce documents

Here, Plaintiff challenges the constitutionality of the prurience restriction—the ground on which his PPP application was denied. *See* Dkt. 1. The ultimate relief that Plaintiff seeks is an order requiring Defendants to "fully process all PPP loan applications without reference to [the prurience restriction]" so that Plaintiff will be eligible to receive a PPP loan. Dkt. 1, at ¶ 101.

Defendants argue Plaintiff is no longer eligible for a PPP loan but-for the prurience restriction due to Gerace's indictments, and therefore Plaintiff's challenges to the prurience restriction are moot.[2] Dkt. 36-3, at 20–22. Plaintiff submitted an affidavit from Scott Meacham stating that "[i]t is [his] belief that Pharaohs *would have* qualified for this PPP funding in every aspect except for the apparent disqualification due to the business partially being involved in a business which the SBA considered of a 'prurient sexual nature.'" Dkt. 43-1, at ¶ 12 (emphasis added). But Plaintiff does not dispute that its sole owner is under federal indictment and, accordingly, that the prurience restriction is no longer the sole basis for Plaintiff's ineligibility. *Id.* Consequently, Plaintiff's injury— its ineligibility to receive a PPP loan due to the prurience restriction—is no longer "likely to be redressed by a favorable judicial decision." *Janakievski*, 955 F.3d at 319. Even if this Court were to declare the prurience restriction unconstitutional as applied to the PPP or inconsistent with the CARES Act, and issue injunctive relief requiring the SBA to process loan applications without regard to the prurience restriction, such relief would

---

and is a common device in summary judgment motions performing that function." (citations omitted)).

[2] Under the SBA's Interim Final Rule, effective March 3, 2021, a business is ineligible for PPP loans if "[a]n owner of 20 percent or more of the equity of the applicant is presently incarcerated or, for any felony, presently subject to an indictment . . . ." Business Loan Program Temporary Changes; Paycheck Protection Program—Revisions to Loan Amount Calculation and Eligibility, 86 FR 13149-01.

not result in Plaintiff being eligible for a PPP loan. Accordingly, the Court finds that

Plaintiff's claims for declaratory and injunctive relief are moot and recommends that

these claims be dismissed.

However, Plaintiff also seeks to recover monetary damages. Dkt. 1, at ¶ 103.

"Claims for damages or other monetary relief automatically avoid mootness, so long as

the claim remains viable." *Stokes v. Vill. of Wurtsboro*, 818 F.2d 4, 6 (2d Cir. 1987)

(internal quotation marks and citation omitted). Neither party has addressed whether

Plaintiff has a viable claim for damages.[3] The Court therefore recommends that

Defendants' request that the case be dismissed as moot in its entirety be denied.

---

[3] Plaintiff brought claims against the United States, the SBA, the SBA Administrator in her official capacity, and the Treasury Secretary in her official capacity. Dkt. 1. Under the doctrine of sovereign immunity, "an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived." *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Plaintiff's claims for damages are therefore likely barred by sovereign immunity. *See MC Mgmt. of Rochester LLC v. Biden*, No. 6:22-CV-06337 EAW, 2023 WL 4194771, at *5 (W.D.N.Y. June 27, 2023) ("[T]here is no waiver of sovereign immunity allowing Plaintiffs to seek damages against the Administrator in her official capacity."); *see also Ascot Dinner Theatre, Ltd. v. Small Bus. Admin.*, 887 F.2d 1024, 1028 (10th Cir. 1989) ("[T]he consent to sue and be sued in § 634(b)(1) does not establish a waiver of immunity so as to permit entertainment of [plaintiff]'s damages claim."); *id.* at 1031 ("Despite the constitutional claim injected, the damages claim against the SBA and its Administrator in his official capacity as asserted by Ascot is barred by sovereign immunity."). And while Plaintiff may have been able to recover damages against the SBA Administrator or Treasury Secretary in their individual capacities under *Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), Plaintiff did not sue either Defendant in their individual capacity. *See Higazy v. Templeton*, 505 F.3d 161, 168 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants *in their individual capacities*.") (emphasis added).

## II.   <u>APA CLAIM</u>

Defendants move for summary judgment on Plaintiff's APA claim—arguing that the CARES Act does not prohibit the SBA from applying its longstanding regulation to the PPP. [4] Dkt. 36-3, at 23–28.

The APA "prohibits agencies—including the SBA—from taking action 'in excess of statutory jurisdiction, authority, or limitations, or short of statutory right.'" *Pharaohs GC*, 2020 WL 3489404, at *3 (quoting 5 U.S.C. § 706(2)(C)). To review whether an interim final rule exceeds the authority conferred by statute, the Court "appl[ies] the two-step framework set forth in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984)." *Pharaohs GC*, 990 F.3d at 226. First, the court determines "whether Congress has directly spoken to the precise question at issue." *Chevron*, 467 U.S. at 842. "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43; *see Pharaohs GC*, 990 F.3d at 226 ("Deference under *Chevron* is not due unless a court, employing traditional tools of statutory construction, is left with an unresolved ambiguity.") (quotation marks and citation omitted). But "if the statute is silent or ambiguous with respect to the specific issue, the question for the

---

[4] In opposing Defendants' motion for summary judgment, Plaintiff fails to address its APA claim. *See* Dkt. 43. On that basis, the Court could find that Plaintiff has abandoned this claim and recommend judgment be entered in favor of Defendants. *See Jackson v. Fed. Exp.*, 766 F.3d 189, 198 (2d Cir. 2014) ("[A] court may, when appropriate, infer from a [counseled] party's partial opposition that relevant claims or defenses that are not defended have been abandoned."); *Taylor v. City of N.Y.*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003*)* ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one claim and the party opposing summary judgment fails to address the argument in any way."). For the purposes of this Report & Recommendation, however, the Court will address the merits of each claim.

court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. In that instance, the agency's interpretation is "given controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Id.* at 844.

Defendants argue that the text of the CARES Act directly supports the SBA's decision to apply its longstanding regulation to the PPP. Dkt. 36-3, at 23–28. Plaintiff previously argued that "any business concern . . . shall be eligible" means that *every* "business concern" with no more than 500 employees is eligible for PPP loans, and, therefore, the Administrator overstepped her authority under the CARES Act by excluding nude-dancing establishments from the Program.

The Second Circuit found Plaintiff's argument unlikely to succeed on the merits because "Congress gave the SBA Administrator discretion to exclude certain types of businesses from the Program." *Pharaohs GC*, 990 F.3d at 226. The PPP "was not created as a standalone program but was added into the existing § 7(a) program, which subjects it to existing conditions and regulations, as well as existing SBA authority." *In re Gateway Radiology Consultants, P.A.*, 983 F.3d 1239, 1256 (11th Cir. 2020). Thus, "[s]ubparagraph D's statement that 'any business concern . . . shall be eligible' is not to the contrary when read in its statutory context—specifically, its foundation in the Small Business Act's 7(a) loan program." *Pharaohs GC*, 990 F.3d at 226. The Act "expressly gives the SBA '[e]mergency rulemaking authority' to 'issue regulations' carrying out the PPP." *In re Gateway Radiology Consultants*, 983 F.3d at 1257 (quoting 15 U.S.C. § 9012)). And it "provides that the SBA '*may* guarantee covered loans under the same terms, conditions, and processes' as § 7(a)." *Id.* (citing 15 U.S.C. § 636(a)(36)(B) (emphasis added)).

Moreover, "the statutory context also supports that Congress presumed other restrictions would apply." *Defy Ventures, Inc. v. U.S. Small Bus. Admin.*, 469 F. Supp. 3d 459, 473 (D. Md. 2020); *see also Diocese of Rochester v. U.S. Small Bus. Admin.*, 466 F. Supp. 3d 363, 376 (W.D.N.Y. 2020) ("Other provisions of the CARES Act clearly anticipate the existence of additional eligibility criteria."). Congress created the PPP in the context of "longstanding regulatory limits on SBA loan eligibility, such as the prurience restriction." *Pharaohs GC*, 990 F.3d at 227. Congress "expressly made some changes to § 7(a)'s requirements, showing it knew how to alter them for PPP loans and how to delegate to the SBA the question about whether to alter others." *In re Gateway Radiology Consultants*, 983 F.3d at 1261; *see also Defy Ventures*, 469 F. Supp. 3d at 473 ("Other parts of the CARES Act expressly lift normally applicable restrictions on loan eligibility, which would have been unnecessary if Congress had intended that no other restriction except the size restrictions apply."); *Tradeways, Ltd. v. United States Dep't of the Treasury*, No. CV ELH-20-1324, 2020 WL 3447767, at *13 (D. Md. June 24, 2020) ("[O]ther provisions of the CARES Act contemplate the existence of eligibility criteria beyond the type of entity and number of employees.").

> For example, the CARES Act expressly includes nonprofit organizations—the very first type of business excluded under the existing 7(a) program rules. *See* 15 U.S.C. § 636(a)(36)(A)(vii), (D)(i); 13 C.F.R. § 120.110(a). But Congress did not similarly clarify its intent to include adult-entertainment businesses in the Program (or foreign businesses, lobbyists, illegal businesses, or oil wildcatters). This strongly suggests that Congress deliberately chose not to change the Administrator's statutory discretion to exclude businesses, other than those it expressly identified in the CARES Act.

*Pharaohs GC*, 990 F.3d at 227.

Accordingly, when viewed in the overall statutory scheme, subparagraph D "merely serves to identify the types and size of organizations that are eligible to receive PPP funds." *Tradeways*, 2020 WL 3447767, at *13; *accord Pharaohs GC*, 990 F.3d at 227–28 ("Subparagraph D must be understood as simply raising the employee threshold defining eligibility for small business relief to 500 and including a few other kinds of employers in the Program, like nonprofit organizations and sole proprietors."). Subparagraph D "does not require the Administrator to make eligible *all* businesses below that threshold." *Pharaohs GC*, 990 F.3d at 228. Instead, the CARES Act "expressly gives the Administrator the general authority to adopt the 'same terms, conditions, and processes' for PPP loans as for 7(a) loans," which includes the prurience restriction. *Id.* The Court concludes that "the CARES Act unambiguously gives the Administrator discretion to adopt the longstanding 'terms, conditions, and processes' of the 7(a) program"—including the prurience restriction.[5] *Pharaohs GC*, 990 F.3d at

---

[5] Applying similar analysis, several courts have found it necessary to proceed to the second step of *Chevron*. *See In re Gateway Radiology Consultants*, 983 F.3d at 1256 (concluding that "Congress has not spoken directly to" whether bankruptcy debtors are eligible for PPP loans); *Defy Ventures*, 469 F. Supp. 3d at 473 ("Congress has not clearly spoken as to whether the SBA may impose additional restrictions on eligibility, including the criminal history exclusion."); *Diocese of Rochester*, 466 F. Supp. 3d at 377 ("[T]he CARES Act is silent regarding the eligibility of debtors in bankruptcy to participate in the PPP."); *Pharaohs GC*, 2020 WL 3489404, at *5 (same for adult-entertainment businesses). Even if Congress's delegation to the Administrator of the general authority to adopt the "same terms, conditions, and processes" for PPP loans as for 7(a) loans means that the CARES Act is ambiguous as to whether adult-entertainment business are excluded from receiving PPP loans, Defendants would still prevail. The SBA's exclusion of adult-entertainment businesses from eligibility for PPP loans, in accordance with the agency's longstanding regulations restricting certain types of businesses from receiving loans, is a "permissible construction of the [CARES Act]." *Chevron*, 467 U.S. at 842; *see Pharaohs GC*, 2020 WL 3489404, at *6 ("[T]he SBA's application of 13 C.F.R. § 120.110 to the PPP is not arbitrary, capricious, or manifestly contrary to the CARES Act."), *aff'd,* 990 F.3d at 228 ("It is a permissible construction of

226. Therefore, the Court recommends that Defendants' motion for summary judgment

on Plaintiff's APA claim be granted.

## III.   CONSTIUTIONAL CLAIMS

### A.   First Amendment Claim

Plaintiff argues that Section 120.110(p) is an unconstitutional condition and

therefore violates its First Amendment rights. Dkt. 43, 3–7. Although "nude dancing is

expressive conduct protected by the First Amendment, it falls only within the outer ambit

of the First Amendment's protections." *Pharaohs GC*, 990 F.3d at 228–29 (internal

quotation marks and citations omitted). Nude dancing thus involves "only the barest

minimum of protected expression." *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 932 (1975).

The general rule "is that 'when the Government appropriates public funds to

establish a program it is entitled to define the limits of that program.'" *Pharaohs GC*, 990

F.3d at 229 (citation omitted).[6] But "the government may not deny a benefit to a person

on a basis that infringes his constitutionally protected . . . freedom of speech even if he

---

subparagraph D to situate its use of the phrase 'any business concern' within the limits
imposed by its statutory and regulatory context.").

[6] Plaintiff is correct that, as Defendants acknowledge, prior decisions addressing the
merits of Plaintiff's claims in the context of its motion for preliminary injunction do not
have a preclusive effect. *See Dentsply Sirona, Inc. v. Dental Brands for Less LLC*, No.
15 CIV. 8775 (LGS), 2020 WL 1643891, at *6 (S.D.N.Y. Apr. 2, 2020) ("[A] determination
at a preliminary injunction hearing—which merely assesses likelihood of success on the
merits— . . . is not a final decision entitled to preclusive effect."). The Court does,
however, find the reasoning in those decisions instructive to its analysis here. *See
Tinnus Enterprises, LLC v. Telebrands Corp.*, 733 F. App'x 1011, 1021 (Fed. Cir. 2018)
(summary order) ("While our decision in [the context of a motion for preliminary
injunction] has no preclusive effect . . . , we still find the merits of our reasoning from
[that prior decision] persuasive to our analysis here."); *In re Siegmund Strauss, Inc.*, No.
13-10887 (MG), 2013 WL 3784148, at *9 (Bankr. S.D.N.Y. July 17, 2013) ("There is no
preclusive effect from this prior decision [in the context of a motion for preliminary
injunction], but it is nevertheless instructive.").

has no entitlement to that benefit." *United States v. Am. Libr. Ass'n, Inc.*, 539 U.S. 194, 210 (2003) (quotation marks and citation omitted). The relevant distinction is between "conditions that define the limits of the government spending program—those that specify the activities Congress wants to subsidize—and conditions that seek to leverage funding to regulate speech outside the contours of the program itself." *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15 (2013); *see Pharaohs GC*, 990 F.3d at 229 ("[T]he government may set funding terms and conditions that specify the activities Congress wants to subsidize unless those terms and conditions seek to leverage funding to regulate speech outside the contours of the program itself." (quotation marks and citation omitted)). Therefore, in determining "whether the government is improperly denying a benefit as opposed to permissibly choosing which speech to subsidize, the question is whether the 'benefit' at issue is *funding* the speech." *Pharaohs GC*, 2020 WL 3489404, at *7.

In *Regan v. Tax'n With Representation of Washington*, the Supreme Court upheld a requirement that nonprofit organizations seeking tax-exempt status under 26 U.S.C. § 501(c)(3) not engage in substantial efforts to influence legislation. 461 U.S. 540 (1983). The Court explained that the tax-exempt status "ha[d] much the same effect as a cash grant to the organization," and therefore by limiting § 501(c)(3) status to organizations that did not attempt to influence legislation, Congress had merely "chose[n] not to subsidize lobbying." *Id.* at 544. In rejecting the nonprofit's First Amendment claim, "the Court highlighted . . . the fact that the condition did not prohibit that organization from lobbying Congress altogether. The condition thus did not deny the organization a government benefit 'on account of its intention to lobby.'" *Agency for Int'l Dev.*, 570 U.S.

14

at 215 (quoting *Regan,* 461 U.S. at 545).

Here, by limiting eligibility for PPP funds to businesses that do not present live performances of a prurient sexual nature, the government merely "chose not to subsidize" nude dancing. *Regan,* 461 U.S. at 544; *see Pharaohs GC*, 990 F.3d at 229 ("As with the subsidy in *Regan*, PPP loans are broadly available, but the government has decided not to subsidize certain types of businesses, even if they engage in constitutionally protected activities."); *Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.*, 24 F.4th 640, 646 (7th Cir. 2022) ("Congress is not trying to regulate or suppress plaintiffs' adult entertainment. It has simply chosen not to subsidize it."); *Am. Ass'n of Pol. Consultants v. United States Small Bus. Admin.*, 613 F. Supp. 3d 360, 367 (D.D.C.) (stating that PPP loans "are, in effect, subsidies" and "[t]he Court is therefore bound by the principles articulated in *Regan*"), *aff'd,* 810 F. App'x 8 (D.C. Cir. 2020). Through this regulation, the government "set funding terms and conditions that "specif[ied] the activities Congress want[ed] to subsidize." *Am. Libr. Ass'n, Inc.*, 539 U.S. at 214. It did not, however, "seek to leverage funding to regulate speech *outside the contours of the program itself*." *Id.* at 214–15. Like in *Regan*, where the challenged condition "did not prohibit [the nonprofit] from lobbying Congress altogether," 461 U.S. at 545, the condition here does not "prohibit[] [Plaintiff] from engaging in the protected conduct outside the scope of the federally funded program." *Rust v. Sullivan*, 500 U.S. 173, 197 (1991); *see Am. Ass'n of Pol. Consultants*, 810 F. App'x at 9 (holding that the political lobbying exclusion "does not 'seek to leverage funding to regulate speech outside the contours of the [PPP] program itself'"). Plaintiff is "still able to [present

entertainment involving nude dancing] without federal assistance." *Am. Ass'n of Pol. Consultants*, 810 F. App'x at 9.

Even though the Court concludes that PPP loans are subsidies, the government still "may not make funding choices that are 'the product of invidious viewpoint discrimination' or 'ai[med] at the suppression of dangerous ideas.'" *Pharaohs GC*, 2020 WL 3489404, at *7 (quoting *Nat'l Endowment for the Arts v. Finley*, 524 U.S. 569, 587 (1998)). The Second Circuit, however, has "rejected the argument that lasciviousness is a viewpoint (or that a classification based on lasciviousness targets a viewpoint)." *Pharaohs GC*, 990 F.3d at 231 (citing *General Media Communications, Inc. v. Cohen*, 131 F.3d 273, 282 (2d Cir. 1997)). The prurience restriction "is content—not viewpoint— based." *Pharaohs GC*, 2020 WL 3489404, at *8; *accord Pharaohs GC*, 990 F.3d at 231 ("'[P]rurient' describes a type of content, not a viewpoint.").

> The word "prurient" operates in the SBA's regulation to describe the subject matter—or content—of businesses excluded from SBA loans. Businesses that present live performances are excluded if the *nature* of those performances is prurient. *See* 13 C.F.R. § 120.110(p). The restriction does not describe a viewpoint; one could not have a prurient view of American policy in the Middle East or antitrust regulation, for example. Indeed, the Supreme Court has treated prurience as a content-based restriction, suggesting in dicta that "prurience and patent offensiveness are ... permissible grounds on which to discriminate—and by implication, they do *not* constitute 'viewpoints.' " *Gen. Media*, 131 F.3d at 282 (discussing *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S.Ct. 2538, 120 L.Ed.2d 305 (1992)).

*Id.* And because "it is well established that the government can make content-based distinctions when it subsidizes speech," the prurience restriction does not violate the First Amendment. *Davenport v. Washington Educ. Ass'n*, 551 U.S. 177, 188–189 (2007). The Court therefore recommends that Defendants' motion for summary judgment on Plaintiff's First Amendment claim be granted.

16

1.   <u>Constitutionally Protected Property Interest</u>

Attempting to sidestep these precedents, Plaintiff argues that this analysis "fails to account for the fact that the forgivable PPP 'loan' funds used for business continuation expenses is a grant, and that Pharaohs had a constitutionally protected property interest in the receipt of those funds upon submitting an application." Dkt. 43, at 5. This argument fails for several reasons.

First, as Defendants point out, Plaintiff offers no support for its contention that the existence of a constitutionally protected property interest plays any role in determining whether the government is improperly denying a benefit in violation of its First Amendment rights. To the contrary, the Supreme Court "has made it emphatically clear that even though a plaintiff's liberty or property interest is required as a premise for a procedural due process claim, such an interest is 'irrelevant to his free speech claim.'" *Owens v. Rush*, 654 F.2d 1370, 1379 (10th Cir. 1981) (quoting *Perry v. Sindermann*, 408 U.S. 593, 599 (1972) (citation omitted)); *accord Dobosz v. Walsh*, 892 F.2d 1135, 1142 (2d Cir. 1989) ("[T]he existence or non-existence of a property interest is irrelevant to [a] First Amendment claim."); *Huang v. Bd. of Governors of Univ. of N. Carolina*, 902 F.2d 1134, 1140 (4th Cir. 1990) ("[P]ossession of a property right is immaterial to a plaintiff's claim that he was deprived of some valuable benefit as a result of exercising his First Amendment rights."); *Little v. City of N. Miami*, 805 F.2d 962, 967 (11th Cir. 1986) ("When an infringement of first amendment rights is alleged, the deprivation of a property interest is irrelevant."); *Wells v. Hico Indep. Sch. Dist.*, 736 F.2d 243, 248 (5th Cir. 1984) ("The absence or presence of a property interest does not affect a First Amendment claim.").

In *Perry*, a public-school teacher alleged that his nonretention was based on his public criticism of the Regents' policies and that this criticism was protected by the First Amendment. 408 U.S. at 593. In discussing the scope of the unconstitutional conditions doctrine, the Supreme Court noted that it "ha[s] applied the principle regardless of the public employee's contractual or other claim to a job." *Id.* at 597. Therefore, while "*irrelevant to his free speech claim*," the teacher's "lack of formal contractual or tenure security in continued employment" was "highly relevant to his procedural due process claim." *Id.* at 599 (emphasis added). The Court thus "drew a distinction between the plaintiff's First Amendment retaliation claim, in which his lack of any entitlement or property interest in his continued employment was 'irrelevant,' and his procedural due process claim, in which those facts were 'highly relevant.'" *Barton v. Clancy*, 632 F.3d 9, 26 (1st Cir. 2011) (quoting *Perry,* 408 U.S. at 599). Accordingly, whether Plaintiff has a constitutionally protected property interest in the PPP loans at issue is "immaterial to [its] free speech claim."[7] *Perry,* 408 U.S. at 598.

Assuming Plaintiff had a legitimate claim to entitlement to PPP funds, and therefore a property interest, due process would "give [it] a fair opportunity to show that [it] meets the criteria for coverage." *NB ex rel. Peacock v. D.C.*, 794 F.3d 31, 42 (D.C. Cir. 2015). But, by Plaintiff's own admission, it *does not qualify* under current regulations because the prurience restriction makes it ineligible. Plaintiff's argument that it has a constitutionally protected property interest in the receipt of PPP funds is therefore irrelevant for the purposes of Defendants' motion.

---

[7] Plaintiff did not plead a procedural due process claim. *See* Dkt. 1.

### B.      Equal Protection Claim

Pharaohs also contends that the SBA's exclusion of businesses from the PPP based on the prurience restriction violates its equal protection rights. Dkt. 1, at ¶¶ 64–71. Generally, "statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose." *Regan*, 461 U.S. at 547. Statutes are subjected to a higher level of scrutiny, however, "if they interfere with the exercise of a fundamental right, such as freedom of speech, or employ a suspect classification, such as race." *Id.* Here, because the court has concluded that the prurience restriction does not directly regulate speech, and Plaintiff does not contend that it employs a suspect classification, "the government's decision not to subsidize [such] activities need only 'bear a rational relation to a legitimate government purpose.'" *Pharaohs GC*, 990 F.3d at 230 (applying rational basis review to SBA's exclusion of nude-dancing establishments from the PPP) (quoting *Regan*, 461 U.S. at 547); *see also Camelot Banquet Rooms*, 24 F.4th at 647 ("A government spending program, especially one responding to an economic emergency, is subject to the least rigorous form of judicial review.").

Rational-basis review "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *Heller v. Doe*, 509 U.S. 312, 319 (1993). Rather, the Court must uphold the classification "if there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id.* at 320 (internal quotation mark omitted). Accordingly, to prevail, "the party challenging the classification must 'negative every conceivable basis which might support it.'" *Sensational Smiles, LLC v. Mullen*, 793 F.3d 281, 284 (2d Cir. 2015) (quoting *Heller*, 509 U.S. at 320 (citation and internal quotation marks omitted)).

Defendants point to the negative "secondary effects" of adult-entertainment businesses and "longstanding SBA policy that it would not be in the agency or the public's interest for the SBA to direct its 'limited resources and financial assistance' to 'businesses engaging in lawful activities of an obscene, pornographic, or prurient sexual nature.'" Dkt. 36-3, at 31–32. Plaintiff does not address this in its opposition, but instead argues that strict scrutiny should be applied—and that the government has failed to meet its burden on that ground. Dkt. 43, at 7.

As the Second Circuit previously noted, "legitimate interests may be served by the government's decision not to subsidize adult-entertainment venues." *Pharaohs GC*, 990 F.3d at 230; *see, e.g.*, *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 47–49 (1986) (holding that local governments may enact zoning ordinances against adult movie theaters to curb negative "secondary effects"); *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 63 (1973) (recognizing the government's legitimate interest in curbing the "debas[ing]" influence of "commercial exploitation of sex"). Plaintiff has failed to meet its burden to "negative every conceivable basis which might support [the prurience restriction]." *Heller*, 509 U.S. at 320; *see Petitpas v. Martin*, No. 20-3557-PR, 2021 WL 6101469, at *3 (2d Cir. Dec. 22, 2021) (affirming grant of summary judgment where the plaintiff failed to meet the burden that would be required for him to prevail on rational basis review of the challenged policy). Moreover, the Court concludes that the negative secondary effects of adult-entertainment venues provide a rational basis for Congress' choice not to subsidize businesses presenting live sexual performances. *See Camelot Banquet Rooms*, 24 F.4th at 648 ("If those secondary effects can support time, place, and manner regulations, they surely provide a rational basis for Congress to choose not

to subsidize this group of businesses."). Accordingly, the Court recommends that Defendants' motion for summary judgment on Plaintiff's Equal Protection claim be granted.

## IV.   ATTORNEY'S FEES

Plaintiff also seeks an award of attorney's fees pursuant to 42 U.S.C. § 1988. Dkt. 1, at 91–95. Under section 1988, "the court has discretion to direct an award [of reasonable attorney's fees] to the prevailing party in any §§ 1983 or 1985 action or proceeding." *Gleave v. Graham*, 954 F. Supp. 599, 613 (W.D.N.Y. 1997), *aff'd,* 152 F.3d 918 (2d Cir. 1998). Here, Plaintiff claims that Counts I and II of its complaint were "brought to enforce a provision of § 1983." Dkt. 1, at ¶ 94. But section 1983 "does not apply to allegedly unlawful acts of federal officers." *United States v. Acosta*, 502 F.3d 54, 60 (2d Cir. 2007). In any event, because Plaintiff has no viable causes of action, its request for attorney's fees must be denied.

## CONCLUSION

In sum, the Court concludes that Plaintiff's claims for declaratory and injunctive relief are moot, and that the prurience restriction is consistent with the CARES Act and does not violate Plaintiff's constitutional rights under the First or Fifth Amendments. Accordingly, the court recommends that Plaintiff's claims for declaratory and injunctive relief be DISMISSED as moot,[8] and that Defendants' motion for summary judgment be GRANTED on Plaintiff's remaining claims.

---

[8] In the alternative, the Court recommends that summary judgment be GRANTED to Defendants on Plaintiff's claims for declaratory and injunctive relief for the reasons stated herein.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed. R. Civ. P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the magistrate judge in the first instance. *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

**Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order.** *Thomas v. Arn*, 474 U.S. 140 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." **Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.**

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **July 31, 2023**
                **Buffalo, New York**

                                          */s H. Kenneth Schroeder, Jr.*
                                          **H. KENNETH SCHROEDER, JR.**
                                          **UNITED STATES MAGISTRATE JUDGE**